## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

DONALD DAVID DILLBECK,

       Petitioner-Appellee,

v.                                    Case No. 18-11748

ATTORNEY GENERAL, STATE           **CAPITAL CASE**
OF FLORIDA, ET AL.,

       Respondents-Appellants.
_____/

## MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION

Petitioner-Appellee Donald Dillbeck, a death-sentenced Florida prisoner,

moves to dismiss this appeal filed by the Florida Attorney General ("the State").

This Court lacks subject matter jurisdiction because the appeal is non-justiciable

under the Article III doctrines of mootness, ripeness, and standing. The Court also

lacks appellate jurisdiction because the order on appeal is not a "final decision"

under 28 U.S.C. § 1291, and the collateral order doctrine does not apply.

**I.    Background**

**A.    Prior history**

Mr. Dillbeck has been on Florida's death row since 1991. His direct appeal,

state post-conviction, and initial federal habeas proceedings were unsuccessful. *See*

*Dillbeck v. State*, 643 So. 2d 1027 (Fla. 1994) (direct appeal); *Dillbeck v. State*, 964

So. 2d 95 (Fla. 2007) (initial state post-conviction appeal); *Dillbeck v. McNeil*, No.

4:07-cv-388 (N.D. Fla. Oct. 7, 2010) (initial § 2254 petition denial);[1] *Dillbeck v. Sec'y, Fla. Dep't of Corrs.*, No. 10-11042 (11th Cir. Jan. 18, 2011) (certificate of appealability denial); *Dillbeck v. State*, 168 So. 3d 224 (Fla. 2015) (successive state post-conviction appeal).

In 2016, the United States District Court for the Northern District of Florida relieved Mr. Dillbeck's 18 U.S.C. § 3599 counsel due to a conflict and, finding that the interests of justice required continued representation for Mr. Dillbeck, appointed the Capital Habeas Unit ("CHU") of the Office of the Federal Public Defender for the Northern District of Florida. *Dillbeck*, No. 4:07-cv-388, ECF No. 38.

The CHU then coordinated with Mr. Dillbeck's state-appointed counsel regarding Mr. Dillbeck's rights under *Hurst v. Florida*, 136 S. Ct. 616 (2016), which had been decided the previous month. *See Lugo v. Sec'y, Fla. Dep't of Corrs.*, 750 F.3d 1198, 1215 (11th Cir. 2014) (explaining the CHU's duty to "track capital cases in [the] state to ensure that claims of death-row inmates are timely presented in both state and federal court"); *Whitton v. Jones*, No. 4:15-cv-200, ECF No. 42 at 2 (Hinkle, J.) ([The CHU] "may and should monitor state proceedings and coordinate with the petitioner's state-court attorney. Doing so is part of providing competent representation in this federal proceeding."). After consultation with the CHU, Mr.

---

[1] This motion cites to the Northern District of Florida's electronic docket. The orders and filings relevant to this appeal are also attached to this motion as Exhibits 1-9.

Dillbeck's state counsel filed a post-conviction motion in state court seeking *Hurst* relief.  In January 2018, the Florida Supreme Court affirmed the state court's denial of that *Hurst* motion.  *Dillbeck v. State*, 234 So. 3d 558 (Fla. 2018).

## B.    The district court's April 5 order

In April 2018, the CHU moved in the district court for authorization to appear in state court on a time-sensitive matter that could implicate constitutional arguments regarding Mr. Dillbeck's death sentence.  *Dillbeck*, No. 4:07-cv-388, ECF No. 44 at 2; *see also* Use of Defender Services Appropriated Funds by Federally Appointed Counsel for State Court Appearances in Capital Habeas Corpus Cases, Committee on Defender Services, United States Judicial Conference (Dec. 9, 2010) (Mem.) (discussing guidelines for authorizing state-court appearances by § 3599 counsel).

The state matter concerns Mr. Dillbeck's newly-created right, under *Atwell v. State*, 197 So. 3d 1040 (Fla. 2016), to be resentenced for a prior felony that was used as an aggravating factor at his capital trial.   Under *Atwell*, Mr. Dillbeck's life sentence for the prior felony is unconstitutional, and he is entitled to resentencing. *See id.* at 1041.  However, at the time of the CHU's motion, Mr. Dillbeck had no state counsel reasonably available to assist him in filing for *Atwell* relief by the impending deadline of May 26, 2018.  *See Dillbeck*, No. 4:07-cv-388, ECF No. 61 at 2 (N.D. Fla. Feb. 11, 2016).  Mr. Dillbeck's state appointed counsel in the capital case informed both Mr. Dillbeck and the CHU that he would not pursue *Atwell* relief,

despite the possible implications for Mr. Dillbeck's capital case. The CHU conferred with the local public defender and also sought to secure pro bono counsel, but was unsuccessful in obtaining a commitment for Mr. Dillbeck's representation. The CHU therefore sought the district court's permission to file the *Atwell* motion in state court by the May 26 deadline in order to preserve Mr. Dillbeck's *Atwell* rights, and any arguments arising from those proceedings relevant to the capital case. *Id.*, ECF No. 44 at 5, 7-8; *see also Lugo*, 750 F.3d at 1215.[2]

On April 5, 2018, the district court granted Mr. Dillbeck's motion, authorizing the CHU to pursue state court relief under *Atwell* and "to litigate any issue arising from the *Atwell* proceeding that may implicate the death penalty." *Dillbeck*, No. 4:07-cv-388, ECF No. 45.

The State moved for "clarification" of the district court's order. *Id.*, ECF No. 46. The State did not dispute that Mr. Dillbeck was entitled to pursue *Atwell* relief, or that there was an impending deadline, but requested clarification that the CHU "shall have no role in state court other than" filing a motion for *Atwell* resentencing

---

[2] The CHU noted in its motion that it was unsure whether it was required to seek authorization to preserve Mr. Dillbeck's rights under the circumstances presented, or whether such representation was already encompassed by § 3599, the Criminal Justice Act ("CJA"), and Judicial Conference guidelines. *See* 18 U.S.C. § 3006A(c); *see also Guide to Judiciary Policy, Guidelines for Administering the CJA and Related Statutes*, Vol. 7a, § 210.20.30 (November 5, 2015). The CHU explained that it was seeking the district court's authorization in an abundance of caution. *See Dillbeck*, No. 4:07-cv-388, ECF No. 44 at 8 & n.2.

in the state trial court and a motion to appoint the local public defender's office to handle any *Atwell* resentencing from that point forward. *Id.* at 4.

The district court denied the State's "clarification" motion, finding that no clarification or limitation of its April 5 order was necessary. *Id.*, ECF No. 50.

The State then filed this appeal from the April 5 order.

### C.    Developments after the notice of appeal

Before and after the district court authorized the CHU to appear in state court, the CHU continued its efforts to secure non-CHU counsel for the *Atwell* litigation. As the CHU explained to the district court, the CHU's interest in the *Atwell* matter was preserving Mr. Dillbeck's rights in the capital case; the CHU did not intend to serve as resentencing counsel. *See id.*, ECF Nos. 44 at 12; 49 at 2.

Shortly before the State filed its notice of appeal from the April 5 order, the CHU secured an agreement from a an expert in *Atwell* ligation, Florida attorney Roseanne Eckert, to initiate and litigate Mr. Dillbeck's resentencing in state court. Mr. Dillbeck, the CHU, and Mr. Dillbeck's state-appointed counsel consented to Ms. Eckert's *Atwell* representation.  However, because the CHU did not anticipate the State's appeal, the CHU had not yet notified the district court or the State of Ms. Eckert's involvement before the notice of appeal was filed.

Shortly after the notice of appeal was filed, the CHU informed the district court that Ms. Eckert would be conducting the *Atwell* litigation for Mr. Dillbeck in

state court and that, as such, the April 5 order's authorization for the CHU to appear in state court was no longer necessary. The CHU filed in the district court a "notice of mootness" and a "motion to end the CHU's authorization to appear in state court" in light of Ms. Eckert's involvement. *Id.*, ECF No. 56. The CHU also submitted a copy of the *Atwell* pleading that Ms. Eckert had already filed in state court. *Id.*, ECF No. 58. The CHU explained that, as a result of Ms. Eckert's involvement, the CHU had not appeared in state court for Mr. Dillbeck on the *Atwell* matter and would not be doing so in the future. *Id.* at 3. The CHU relayed its satisfaction that Ms. Eckert's involvement would ensure that Mr. Dillbeck's rights were preserved. *Id.*

The State filed a response opposing further action by the district court regarding the April 5 order, arguing that the district court lacked jurisdiction because of the notice of appeal. *Id.*, ECF No. 59. The State further insisted that, even if the district court retained jurisdiction, the State would now *oppose* the district court ending the CHU's authorization because "[i]t is time for the Eleventh Circuit to speak their piece on the subject" of the CHU appearing in state court. *Id.* at 21.

The district court agreed with the State that the filing of the notice of appeal divested the district court of jurisdiction. *Id.*, ECF No. 61 at 3. However, the district court entered an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1(a) (allowing a district court to state whether it would grant a motion if its jurisdiction had not been divested by the filing of a notice of appeal). *Id.* at 1, 3.

The district court's indicative ruling stated that the court "would grant Petitioner's pending motion in the event the Eleventh Circuit remands for that purpose." *Id.* at 3. The district court further explained:

> Petitioner has now secured other counsel who has initiated the state court proceeding. Moreover, *Petitioner's motion indicates that the Capital Habeas Unit never filed anything in state court nor took other action consistent with this Court's grant of authority. Petitioner no longer needs the Capital Habeas Unit to represent him in state court on an emergency basis. Accordingly, this Court indicates that had Respondent not appealed and Petitioner's motion to vacate were properly before this Court, this Court would grant Petitioner's motion.*

*Id.* at 3-4 (emphasis added).

## II.     This Court lacks subject matter jurisdiction because the appeal is non-justiciable under the Article III doctrines of mootness, ripeness, and standing

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The case-or-controversy requirement imposes what are generally referred to as "justiciability" limitations, which ensure that "courts consider only those matters that are presented in an adversarial context." *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998). As this Court has emphasized, justiciability is "an important restriction on the power of the federal courts." *Id.*

Here, there is no actual case or controversy for this Court to resolve. Three "strands" of justiciability—mootness, ripeness, and standing—deprive this Court of jurisdiction to review the district court's April 5 order. *See id.*

7

## A.    The appeal is moot

This Court has no jurisdiction to review moot questions. *United States v. Sec'y, Fla. Dep't of Corrs.*, 778 F.3d 1223, 1227 (11th Cir. 2015). An appeal is moot "when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore*, 518 U.S. 149, 150 (1996). "An appellate court simply does not have jurisdiction under Article III to decide questions which have become moot by reason of intervening events." *Brooks v. Georgia State Bd. Of Elections*, 59 F.3d 1114, 1119 (11th Cir. 1995) (internal quotation omitted).

The State's appeal of the April 5 order, which granted the CHU authorization to appear in state court for Mr. Dillbeck's *Atwell* litigation, was mooted by an intervening event: Ms. Eckert's agreement to file and litigate the *Atwell* matter instead of the CHU. As Mr. Dillbeck informed the district court, the CHU never appeared in state court pursuant to the April 5 order and will not be appearing pursuant to the April 5 order in the future. *Dillbeck*, No. 4:07-cv-388, ECF No. 56 at 3. The CHU's interest in the *Atwell* matter was preserving Mr. Dillbeck's rights in the capital case. *See id.*, ECF No. 44 at 12. Ms. Eckert is preserving those rights by timely filing Mr. Dillbeck's *Atwell* motion, *see id.*, ECF No. 58, and agreeing to represent Mr. Dillbeck in the *Atwell* litigation without any state-court appearances

8

by the CHU.  As a result, there is no "effectual relief whatever" this Court can grant the State on appeal from the April 5 order.  *Calderon*, 518 U.S. at 150.

The lack of a live case or controversy is highlighted by the fact that Mr. Dillbeck moved in the district court for *the precise relief the State seeks in this appeal*: to end the CHU's authorization to appear in state court pursuant to the April 5 order.  *Dillbeck*, No. 4:07-cv-388, ECF No. 56.  The only reason that motion was not granted, as noted in the district court's indicative order, was that the State had filed a notice of appeal.  *Id.*, ECF No. 61 at 3-4.

Because the parties now agree that the April 5 order should no longer be in effect, a decision by this Court regarding whether the April 5 order was proper in the first place would constitute an advisory opinion.  As the United States Supreme Court has emphasized, "[i]t has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 112 (1992) (internal quotation omitted).  And, as this Court has oft-reminded, courts must only decide issues presented in "an adversarial context."  *Leahy*, 145 F.3d at 1244.

Illustrative of the instant appeal's mootness are precedents holding that an appeal of a preliminary injunction becomes moot when the injunction expires.  *See, e.g.*, *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S.

9

363, 367 (1960); *Brooks,* 59 F.3d at 1119.  As the United States Supreme Court has explained, if the preliminary injunction has expired, it no longer has legal effect on the parties, and an appellate decision affirming or vacating the defunct injunction "cannot affect the legal rights of [the] litigants."  *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).  Here too, the CHU's authorization to appear in state court pursuant to the April 5 order is defunct.  The CHU cannot exercise its authorization to preserve Mr. Dillbeck's *Atwell* rights because Ms. Eckert's filing has already preserved those rights.  There is nothing left for the CHU to do.  A decision by this Court on the merits of the April 5 order cannot affect the legal rights of the parties.

The State did not dispute below that Ms. Eckert's representation of Mr. Dillbeck in the *Atwell* matter mooted the April 5 order.  *See Dillbeck*, No. 4:07-cv-388, ECF No. 59 at 1, 12.  Rather, the State insisted that two exceptions to mootness would allow this Court to exercise jurisdiction: "1) the capable-of-repetition-yet-evading-review exception; and 2) the voluntary cessation of the questioned practice exception."  *Id.* at 1, 12-21.  The State is mistaken; neither exception applies.

The capable-of-repetition exception "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  To qualify for the exception, two elements must be simultaneously present: "(1) the challenged action was in its duration too short to be

10

fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004). "[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that *the same controversy* will recur *involving the same complaining party*." *Murphy*, 455 U.S. at 482 (emphasis added).

This is plainly not one of the "exceptional situations" where the capable-of-repetition exception applies. In arguing for this exception in the district court, the State made the fundamental error of assuming that the CHU and the Florida Attorney General were the parties, rather than *counsel* for the parties. The only parties in this federal habeas case are Mr. Dillbeck and the Secretary of the Florida Department of Corrections, who has custody over Mr. Dillbeck. *See* 28 U.S.C. § 2242; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Therefore, an exception to mootness only applies if there is a "reasonable expectation" or "demonstrated probability" that *Mr. Dillbeck* will again seek authorization for his CHU counsel to appear in state court on the *Atwell* matter. Mr. Dillbeck will not again seek to have his CHU counsel appear in state court to secure his *Atwell* rights because those rights have already been secured by Ms. Eckert. There is no reasonable scenario under which Mr. Dillbeck will again seek the relief granted by the April 5 order. *See Brooks*, 59 F.3d

at 1120 (explaining that "a controversy is not capable of repetition if there is only a mere physical or theoretical possibility of recurrence.") (internal quotation omitted).

The State cannot meet the capable-of-repetition exception by arguing that *the CHU* may seek district court authorization to appear in state court *in other cases*. The exception applies only to the *parties* in this action, and the CHU is not a party.

As to other cases, the CHU has on occasion sought authorization to appear in state court, the issue was never mooted, and the State chose not to appeal.[3]

For similar reasons, the "voluntary cessation" exception to mootness also does not apply. That exception provides that a party's voluntary cessation of a challenged practice may allow a moot challenge if there is a reasonable expectation that the challenged practice will be repeated. *Friends of Earth, Inc.* v. *Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000). The "rule traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2000).

Here, Mr. Dillbeck did not temporarily cease his request for the CHU to appear in state court for the purpose of evading judicial review. He simply notified the district court that it was no longer necessary for the CHU to be authorized to

---

[3] *See, e.g.*, *Bailey v. Jones*, No. 5:14-cv-333, ECF No. 51 (N.D. Fla. Aug. 31, 2016) (Rodgers, C.J.); *Hertz v. Jones*, No. 4:06-cv-507, ECF No. 51 (N.D. Fla. Aug. 10, 2016) (Hinkle, J.).

appear in state court in light of the agreement of Ms. Eckert to litigate the *Atwell* matter.  And there is no reasonable chance that Mr. Dillbeck will again seek authorization for his CHU counsel to appear in state court on the *Atwell* matter.  Ms. Eckert's representation has eliminated any need for the CHU to preserve Mr. Dillbeck's *Atwell* rights in state court, as Ms. Eckert has already done so.  Even to the extent the State may argue that *the CHU* voluntarily declined to appear in state court, no mootness exception would apply because *the CHU is counsel—not a party*.

The United States Supreme Court's decision in *DeFunis* provides a helpful example of why the mootness exceptions do not apply here.  In that case, a law school applicant challenged the constitutionality of a state law school's denial of his application for admission, but the applicant was admitted to the law school during the litigation, and was in his final semester when the case reached the Supreme Court.  The Court held that the case was moot and that no exception applied because the applicant "will never again be required to run the gantlet of the Law School's admission process, and so the question is certainly not 'capable of repetition' *so far as he is concerned*."  *DeFunis*, 416 U.S. at 319 (emphasis added).  "Moreover," the Court explained, "just because this particular case did not reach the Court until the eve of the petitioner's graduation from Law School, it hardly follows that the issue he raises will in the future evade review . . . . [T]here is no reason to suppose that a subsequent case attacking those procedures will not come . . . ."  *Id.*

Here too, the issue of the CHU appearing in a state-court *Atwell* proceeding is not capable of repetition *so far as Mr. Dillbeck is concerned*. Mr. Dillbeck will never again be in a position where he is without state counsel to file an *Atwell* motion by the deadline of May 26, 2018, because Ms. Eckert's filing met that deadline. To the extent that the State wishes to challenge the practice of *the CHU* appearing in state court generally, including in other cases, the State has opportunities to raise such challenges in subsequent cases that have not been mooted. Neither Mr. Dillbeck's case, nor the CHU's state-court appearances in other cases, can save *this* appeal from mootness. *See Lynch v. Baxley*, 744 F.3d 1452, 1456 (11th Cir. 1984) ("Past injury from alleged unconstitutional conduct does not in itself show a present case or controversy . . . if unaccompanied by current adverse effects.").

**B.    The appeal is unripe**

The State's appeal of the April 5 order is also non-justiciable on ripeness grounds. "Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting judicial resources through review of potential or abstract disputes." *See National Advertising Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005). In other words, the "ripeness doctrine keeps federal courts from deciding cases prematurely." *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006). In deciding whether a claim is ripe for review, this Court looks to (1) the fitness of the issues for judicial decision, and

(2) the hardship to the parties of withholding court consideration. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1224 (11th Cir. 2004).

The issue in this appeal is whether the district court correctly authorized the CHU to appear in state court on the *Atwell* matter. That issue is not ripe for adjudication because the CHU has not, is not, and will not be exercising the authorization granted by the district court's April 5 order. In order for this Court to have jurisdiction over whether the CHU was properly authorized to appear in state court on the *Atwell* matter, the CHU must have actually appeared in state court pursuant to that authorization. From the ripeness perspective, the parties in this case—Mr. Dillbeck and the Secretary—will suffer no hardship from a lack of intervention by this Court on the issue of the CHU appearing in state court. The State's appeal is not ripe unless and until the CHU appears in state court for Mr. Dillbeck on the *Atwell* matter pursuant to the April 5 order, which, as the CHU has informed the district court, the State, and now this Court, will not happen.

### C.    The State lacks standing

The State's appeal is also non-justiciable under the standing doctrine, which "deals with which party can appropriately bring a suit." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006). "It is by now axiomatic that standing requires the plaintiff to demonstrate injury in fact, causation, and redressability." *Id.* at 1206.

Article III requires litigants to demonstrate standing in both trial and appellate courts. *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003).

Here, the State cannot demonstrate that the Secretary of the Florida Department of Corrections has suffered any injury—let alone causation of that injury by Mr. Dillbeck—regarding the district court's authorization for the CHU to appear in state court for Mr. Dillbeck on the *Atwell* matter. Even if the issue had not become moot and the CHU had appeared in state court in this case, there would have been no cognizable injury to the Secretary. The district court authorized the CHU to appear in state court for Mr. Dillbeck under § 3599, which governs the payment of *federal* funds to appointed federal counsel. State entities like the Florida Department of Corrections and the Florida Attorney General have no recognized interest in the expenditure of federal § 3599 funds. *Cf. Death Row Prisoners of Pennsylvania v. Ridge*, 948 F. Supp. 1278, 1279, n.2 (E.D. Pa. 1996) ("The Court observes that the Defendants lack standing to object to the appointment of counsel. That is a matter between Plaintiffs, the Court and their prospective lawyers."); *Walter v. Beard*, 2010 WL 936466 at *2 (M.D. Pa. 2010) ("Petitioner's motion seeks grant of in forma pauperis status and appointment of federal counsel and involves no issues on which the state Respondent has standing.").[4] Accordingly, standing is not satisfied here.

---

[4] Indeed, it is unclear whether even *federal* prosecutors have standing to challenge a § 3599 order. *See, e.g.*, *Campanioni v. Barr*, 962 F.2d 461, 464 (5th Cir. 1992).

### D.    The State asks for an advisory opinion

The mootness, ripeness, and standing doctrines prevent courts from issuing "advisory" opinions. *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("The oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (internal quotation marks omitted).  An advisory opinion is precisely what the State seeks here.  In the district court, the State opposed Mr. Dillbeck's request for the same relief the State now seeks from this Court—to end the CHU's authorization pursuant to the April 5 order—because, as the State expressed, the State wants the judges of this Court "to speak their piece on the subject" of the CHU appearing in state court generally.  *Dillbeck*, No. 4:07-cv-388, ECF No. 59 at 21.  Under Article III, this Court does not have jurisdiction to "speak its piece" unless the particular appeal before the Court is justiciable.  Because this appeal is not justiciable, any decision by this Court on the merits would be an unconstitutional advisory opinion.

### III.   This Court lacks appellate jurisdiction because the district court's order is not a "final decision," and the collateral order doctrine does not apply

This Court has appellate jurisdiction over "final decisions" of the district court.  28 U.S.C. § 1291.  A "final decision" of the district court "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v. Hall*, 138 S. Ct. 1118, 1123-24 (2018).  In order to immediately appeal a non-final order, the appellant must either obtain leave from the district court under § 1292(b),

or the appeal must fit within a narrow exception known as the "collateral order doctrine." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949).

Here, the April 5 order is not a "final decision" under § 1291: the order did not "end the litigation on the merits." *Hall*, 138 S. Ct. at 1123. The State also did not seek certification to appeal the April 5 order pursuant to § 1292(b). Accordingly, as both the State and the district court recognized below, this Court lacks jurisdiction over this appeal unless the April 5 order satisfies the "narrow" collateral order doctrine. *See Dillbeck*, No. 4:07-cv-388, ECF Nos. 59 at 8-9; 61 at 3.

To be appealable under the collateral order doctrine, a non-final order must resolve an "important" issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir.2009). Only a "small class" of non-final orders justify an appellate court departing from § 1291's final judgment rule. *See Coopers & Lybrand*, 437 U.S. at 468.

The April 5 order does not satisfy the collateral order doctrine. Although the order addresses an issue separate from the merits of Mr. Dillbeck's federal habeas case, the issue is not sufficiently "important" to justify departure from § 1291.

The Supreme Court has made clear that in order for the collateral order doctrine to apply, the interlocutory appeal must be "too important to be denied

18

review." *Cohen*, 337 U.S. at 546; *see also Lauro Lines s.r.l. v. Chasser,* 490 U.S. 495, 502 (1989) (Scalia, J., concurring) ("The importance of the right asserted has always been a significant part of our collateral order doctrine").  An "important" issue is "weightier than the societal interests advanced by the ordinary operation of final judgment principles."  *Digital Equip. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994).  Issues are "important" enough for immediate appeal only where "some particular value of a high order, such as honoring the separation of powers, preserving the efficiency of government, or respecting a State's dignitary interests was marshaled in support of the interest in avoiding trial."  *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014) (internal quotation and alterations omitted).

Examples of "important" issues significant enough to justify immediate appeal include denials of the defenses of absolute presidential immunity, qualified immunity, Eleventh Amendment immunity, and double jeopardy. *Id.* "In all of these cases, a substantial public interest exists in taking an immediate appeal." *Id.* (internal quotations omitted).  On the other hand, the collateral order doctrine does not apply to review of the denial of motions alleging violations of grand jury secrecy, the right to a speedy trial, vindictive prosecution, or insufficient evidence. *See United States v. Shalhoub*, 855 F.3d 1255, 1260 (11th Cir. 2017) (citing cases).  This Court has also explained that it will not hear interlocutory appeals from orders denying class certification or orders granting or denying trial severance. *Hoffmann*

*v. De Marchena Kaluche & Asociados*, 642 F.3d 995, 997 (11th Cir. 2011). "Although important" in some sense, these issues were not sufficiently important to satisfy the collateral order doctrine's high standard. *Shalhoub*, 855 F.3d at 1260.

The issue of the CHU being authorized to appear in state court to preserve Mr. Dillbeck's *Atwell* rights, as matter of the district court's discretion, is not sufficiently "important" to justify departure from the final judgment rule. The order does not involve "some particular value of high order" or weighty societal interest. It addresses an esoteric and case-specific issue regarding the expenditure of § 3599 funds, at the discretion of the district court, on discrete state-court litigation in order to ensure preservation of a death-sentenced prisoner's constitutional rights. The order does not require the Secretary or the State to endure any hardship that could be avoided by an interlocutory appeal. And, as Chief Judge M. Casey Rodgers of the Northern District of Florida has observed, there is no dispute among the judges in that district regarding the issue the State seeks to appeal. *See Archer v. Jones*, No. 3:06-cv-312, ECF No. 90 (N.D. Fla. Aug. 5, 2016) ("The orders in this district authorizing state court exhaustion of *Hurst* claims and granting permission for the CHU to exhaust these claims in state court reflect a consistent view that the CHU is authorized to exhaust the state court claim in the event petitioners do not have available state postconviction counsel who can furnish adequate representation.").

Because the issue addressed by the April 5 order is not "sufficiently important to overcome the policies militating against interlocutory appeals," *Chasser*, 490 U.S. at 503 (Scalia, J., concurring), this Court should not apply the collateral order doctrine. The appeal should be dismissed for lack of appellate jurisdiction.

## IV. Conclusion

The appeal should be dismissed.

Respectfully submitted,

**/s/** Randolph P. Murrell
Randolph P. Murrell
Federal Public Defender
Northern District of Florida

/s/ Billy H. Nolas
Billy H. Nolas
Chief, Capital Habeas Unit
Sean Gunn
Kimberly Sharkey
Shehnoor Grewal
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300
billy_nolas@fd.org

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted Rule 32(f) and Rule 27(a)(2)(B), this document contains 5,192 words.

This document complies with the typeface requirements of Rules 27(d)(1)(E) and 32(a)(5), and the type-style requirements of Rules 27(d)(1)(E) and 32(a)(6), because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

<u>/s/ Billy H. Nolas</u>
Billy. H. Nolas

## <u>CERTIFICATE OF SERVICE</u>

This document was served through the CM/ECF system on Assistant Attorney General Charmaine Millsaps, at charmaine.millsaps@myfloridalegal.com and capapp@myfloridalegal.com, on May 8, 2018.

<u>/s/ Billy H. Nolas</u>
Billy. H. Nolas

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

DONALD DAVID DILLBECK,

        Petitioner,

v.                                Case No. 4:07-cv-388-MW

JULIE L. JONES, SECRETARY,        **CAPITAL CASE**
FLORIDA DEPARTMENT
OF CORRECTIONS,

        Respondent.
_____/

## EMERGENCY/EXPEDITED MOTION TO PERMIT CAPITAL HABEAS UNIT COUNSEL TO APPEAR IN STATE COURT

Petitioner moves for an order permitting the Capital Habeas Unit ("CHU") of the Office of the Federal Public Defender to pursue state-court proceedings for Petitioner on a time-sensitive issue that may implicate federal constitutional arguments regarding Petitioner's death sentence.[1]   There is no other counsel reasonably available to initiate the state proceeding for Petitioner by the putative deadline of May 26, 2018.  Allowing the CHU to appear in state court for Petitioner on this matter is consistent with 18 U.S.C. § 3599 and this Court's orders in

---

[1] Petitioner files this motion pursuant to Local Rule 7.1(L) ("A motion that requires a ruling more promptly than would occur in the ordinary course of business may be labeled an emergency."). In accordance with the rule, counsel will orally advise the Clerk's office that the emergency motion has been filed. *Id.*

**Exhibits Page 2**

*Hutchinson v. Jones*, No. 3:13-cv-128.  This motion is also in the interests of justice.  Counsel for Respondent does not oppose the Court granting the CHU permission to appear, but has a limitation related to the resentencing itself, which is described at the end of this motion.

## I.    Background

In 1991, Petitioner was convicted of murder and related crimes in a Florida court.  The jury recommended the death penalty by a vote of 7 to 5.  The trial court sentenced Petitioner to death after finding aggravation, including that, at the time of the capital offense, Petitioner was serving a life sentence for a prior capital felony committed in 1979 when Petitioner was 15 years old.  *Dillbeck v. State*, 643 So. 2d 1027, 1028 n.1 (Fla. 1994).  That aggravator was also argued to the jury.

The Florida Supreme Court affirmed Petitioner's conviction and death sentence on direct appeal.  *Id.*, *cert. denied*, 514 U.S. 1022 (1995).  Petitioner's initial efforts at state post-conviction relief failed.  *Dillbeck v. State*, 964 So. 2d 95 (Fla. 2007); *Dillbeck v. State*, 168 So. 3d 224 (Fla. 2015).  Petitioner's federal habeas petition, filed by prior counsel, was denied on the merits, ECF No. 19, and no certificate of appealability was issued, ECF Nos. 29, 33.

In 2016, this Court appointed the CHU to represent Petitioner under § 3599.  ECF No. 38.  The CHU thereafter coordinated with state-appointed counsel, who filed a successive state post-conviction motion seeking relief from Petitioner's death

**Exhibits Page 3**

sentence under *Hurst v. Florida*, 136 S. Ct. 616 (2016), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).  In 2018, the Florida Supreme Court affirmed the trial court's denial of that motion.  *Dillbeck v. State*, 234 So. 3d 558 (Fla. 2018).  Petitioner is still within the time to file a petition for a writ of certiorari, *see* Sup. Ct. Rule 13.1, and the CHU will be seeking certiorari review.

While state counsel was pursing *Hurst* relief for Petitioner, Respondent filed a motion in this Court to "preclude the CHU from appearing in state court."  ECF No. 39.  The motion was based on CHU counsel's appearance on behalf of state counsel at a hearing in the *Hurst* case.  The hearing related to compiling and transmitting the record on appeal to the Florida Supreme Court.  *Id.*  This Court denied Respondent's motion to preclude, ruling that (1) Respondent's view that federal habeas counsel are not authorized to appear in state court for any purpose is an "unduly restrictive approach," and (2) the hearing at which CHU counsel appeared was ministerial.  ECF No. 43.  The Court noted that the CHU was required to seek pre-authorization to appear in state court on "substantive" matters.  *Id.* at 2.

It is unclear to CHU counsel whether the state-court litigation addressed by this motion is ancillary, so that authorization from this Court would not be necessary. As this Court is aware, authorization from a district judge is not required for ancillary state-court proceedings, ministerial matters, or when seeking a stay of execution in cases where a death warrant is in effect or execution might be imminent; in such

**Exhibits Page 4**

instances, the CHU is already authorized under Administrative Office of the United States Courts and Defender Services protocols. However, in an abundance of caution, and given Respondent's prior filing in this case, the CHU seeks this Court's authorization.

## II.    Petitioner is entitled to resentencing in state court on a prior felony conviction that contributed to his death sentence, but that relief may only be available if state proceedings are initiated by May 26, 2018

Petitioner is entitled to resentencing in state court on a prior felony conviction that contributed to his death sentence. In 1979, two weeks after Petitioner turned 16, he pleaded guilty to murder and received a life sentence with the possibility of parole after 25 years. *See* Judgment, *State v. Dillbeck*, No. 1979-335CF-JRS (Lee Cty., Fla. June 6, 1979). Twelve years later, during the penalty phase of Petitioner's capital trial, the judge found as an aggravating factor that Petitioner was serving a life sentence for the 1979 conviction when he committed the capital offense. *Dillbeck*, 643 So. 2d at 1028 n.1.

In 2016, the Florida Supreme Court decided *Atwell v. State*, 197 So. 3d 1040, 1041 (Fla. 2016). *Atwell* held that life sentences imposed on juveniles in Florida violate the Eighth Amendment in light of *Miller v. Alabama*, 567 U.S. 460 (2012), even where the life sentence includes the possibility of parole. The Court found that "Florida's existing parole system, as set forth by statute, does not provide for individualized consideration of [the defendant's] juvenile status at the time of the

4

**Exhibits Page 5**

murder, as required by *Miller*," and that such sentences are thus "virtually indistinguishable from a sentence of life without parole." *Atwell*, 197 So. 3d at 1041.

*Atwell*'s application of *Miller* to Florida's life-with-parole sentences applies on collateral review. *See Falcon v. State*, 162 So. 3d 954 (Fla. 2015). Accordingly, since *Atwell*, numerous Florida defendants who originally received such sentences have successfully moved for resentencing. *See, e.g.*, *Kirk v. State*, 210 So. 3d 769 (Fla. 1st DCA 2017); *Burney v. State*, 211 So.3d 1106 (Fla. 2d DCA 2017); *Michel v. State*, 204 So. 3d 101 (Fla. 4th DCA 2016).

Under *Atwell*, Petitioner is also entitled to a resentencing on the 1979 conviction. At a resentencing, Florida law requires individualized consideration of Petitioner's status as a 15-year-old juvenile at the time of the offense. *Atwell*, 197 So. 3d at 1041.

Florida law may impose a two-year limitation period on Petitioner's ability to move for *Atwell* resentencing. *See* Fla. R. Crim. P. 3.850(b); *see also Falcon*, 162 So. 3d at 956. Therefore, the appropriately cautious approach is for Petitioner's counsel to seek resentencing for his 1979 conviction by May 26, 2018—two years from the date *Atwell* was decided—in order to ensure that his rights are preserved.

## III. Resentencing on Petitioner's prior felony may give rise to federal constitutional arguments regarding the death sentence

Because Petitioner's 1979 conviction contributed to the death sentence, resentencing on that conviction may implicate federal constitutional claims. For

**Exhibits Page 6**

example, Petitioner may have arguments under *Townsend v. Burke*, 334 U.S. 736, 741 (1948), and *United States v. Tucker*, 404 U.S. 443, 447 (1972), based on the trial jury and judge's receiving misinformation about the validity of Petitioner's life sentence in applying the prior-felony aggravator.   Petitioner may also have arguments under *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988), and related due process and Eighth Amendment concerns, as aggravation supported by the prior felony conviction and sentence in the capital case is now questionable.   Petitioner may further argue that resentencing on the 1979 conviction requires reconsideration of the remaining aggravators' sufficiency to sustain his death sentence.   *See Clemons v. Mississippi*, 494 U.S. 738 (1990).   These and other precedents may give Petitioner an opportunity to raise constitutional challenges to his death sentence, but only if he has counsel move for relief under *Atwell* by May 26, 2018.

At this stage, consideration of the merits of prospective federal constitutional arguments would be premature.   The urgent issue before the Court now is whether Petitioner is in danger of procedurally forfeiting his right to *Atwell* resentencing and preserving resulting federal constitutional challenges to his death sentence.   If Petitioner does not have counsel to file an *Atwell* motion in state court by May 26, 2018, he may lose the right to be resentenced, and any federal constitutional arguments regarding his death sentence may be deemed barred.   This Court should

**Exhibits Page 7**

ensure that Petitioner's federal constitutional rights are not surrendered due solely to lack of counsel to file the state-court proceeding.

## IV. Petitioner has no other counsel available to represent him in seeking resentencing on the prior felony by May 26, 2018

Petitioner has no other counsel available to represent him in seeking resentencing on the 1979 conviction by May 26, 2018. Petitioner's current state-appointed counsel, attorney Baya Harrison, has informed Petitioner and the CHU that he will not seek resentencing for Petitioner under *Atwell*. Mr. Harrison does not object to the CHU seeking resentencing for Petitioner under *Atwell*, but Mr. Harrison will not be involved in any way.

Even if Mr. Harrison was available, it is doubtful that Mr. Harrison would be permitted to file a motion under *Atwell* matter in light of Florida law. That law provides that state-appointed counsel in a capital post-conviction case may not represent the client in a prior case used as an aggravator, such as the 1979 conviction in Petitioner's case. *See* Fla. Stat. § 27.711(11); *State v. Kilgore*, 976 So. 2d 1066, 1069-70 (Fla. 2007) (discussing this prohibition under § 27.711(11) of the Florida statute). The CHU, of course, is not bound by that state-appointment prohibition.

Because Mr. Harrison will not be seeking resentencing for Petitioner, the CHU is the most appropriate counsel to do so. As § 3599 counsel, the CHU is familiar with Petitioner's case and the 1979 conviction and sentence that formed the basis for the prior-felony aggravator. The CHU has developed a relationship of trust

**Exhibits Page 8**

with Petitioner.  Petitioner himself wants the CHU to undertake the *Atwell* matter and has authorized this representation.  Without the CHU's assistance, Petitioner will be faced with the impossible task of filing a pro se *Atwell* motion and seeking resentencing on his own.

**V.   State-court representation by the CHU under these circumstances is consistent with § 3599 and this Court's orders in *Hutchinson*, and is also in the interest of justice**

As noted earlier, it is unclear that authorization is required in this instance.[2] However, the CHU seeks this Court's authorization in an abundance of caution. State-court representation by the CHU under these circumstances is consistent with § 3599, which provides that counsel appointed for a state prisoner's federal habeas case shall "represent the [petitioner] throughout every subsequent stage of available

---

[2] It is unclear whether the CHU is required to seek explicit authorization from this Court to litigate the *Atwell* matter, or whether such representation is already encompassed by § 3599, the Criminal Justice Act ("CJA"), and the Judicial Conference's guidelines for CJA administration, as an "ancillary matter."  Under the CJA statute, 18 U.S.C. § 3006A(c), a "person for whom counsel is appointed shall be represented at every stage of the proceedings . . . including ancillary matters appropriate to the proceedings."  The Judicial Conference's guidelines provide that, in determining whether an ancillary matter is within the meaning of § 3006A(c), the question is "whether such representation is reasonably necessary to accomplish" objectives such as (1) "to protect a Constitutional right," (2) "to contribute in some significant way" to the defense, and (3) to "aid in preparation" for the federal proceeding.  *See Guide to Judiciary Policy, Guidelines for Administering the CJA and Related Statutes*, Vol. 7a, § 210.20.30 (November 5, 2015).  Under those criteria, the *Atwell* proceeding may well be an "ancillary matter" appropriate to Petitioner's death penalty case.  Assuming this Court's authorization is required, however, state-court representation by the CHU is appropriate under the circumstances.

**Exhibits Page 9**

judicial proceedings," including "all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures." 18 U.S.C. § 3599(e). Here, ensuring that Petitioner is able to secure his right to resentencing on the 1979 conviction is a necessary component of the CHU's representation in the death penalty case.

The United States Supreme Court's opinion in *Harbison v. Bell*, 556 U.S. 180, 186, 190 n.7 (2009), established that state-court representation by § 3599 counsel may be appropriate under certain circumstances, including where it is needed to preserve federal constitutional arguments. The Eleventh Circuit's precedents are in accord. In fact, the Eleventh Circuit has suggested that federally-appointed counsel has a *duty* to provide representation in state court instead of allowing a federal claim to lapse or be otherwise impeded. *See Gore v. Crews*, 720 F.3d 811, 814 n.1 (11th Cir. 2013). Here, the CHU is duty-bound to ensure that any deadline imposed on initiating *Atwell* proceedings does not frustrate Petitioner's potential federal constitutional claims in the death penalty case.

The judges of the Northern District of Florida agree that § 3599 permits state-court representation by the CHU on a case-by-case basis. *See, e.g., Hutchinson v. Jones*, No. 3:13-cv-128, ECF No. 69 (Order of Walker, J.); *Guardado v. Jones*, N.D. Fla. No. 4:15-cv-256, ECF No. 20 (Order of Hinkle, J.); *Booker v. Jones*, N.D. Fla.

**Exhibits Page 10**

No. 1:08-cv-143, ECF No. 60 (Order of Rodgers, C.J.).[3]   While the CHU has received authorization to appear in state court as co-counsel with the lawyer appointed by the state court, *see Hutchinson*, No. 3:13-cv-128, ECF No. 69, and cases collected in n.3, *supra*, this District's Judges have *never* hesitated to grant authorization where state counsel is unavailable to litigate.   Here, as explained above, Petitioner's state counsel has not initiated an *Atwell* proceeding, informed the CHU that he will not be doing so, and agrees that the CHU should proceed with the matter.   State law appears to preclude state-court counsel from making the necessary filings.   There is no other state counsel who has indicated they will adequately undertake the state representation.   The CHU should be granted leave to appear in state court.

In *Hutchinson*, this Court emphasized its view that § 3599 and *Harbison* permit the Court to authorize the CHU to appear in state court, and noted that state-appointed counsel in Mr. Hutchinson's case was unable to adequately litigate the state-court matter without the CHU's assistance.   *Hutchinson*, No. 3:13-cv-128, ECF

---

[3] This view is also shared widely among judges in the Middle District of Florida. *See, e.g.*, *Rigterink v. Secretary*, M.D. Fla. No. 8:16-cv-1680, ECF No. 9 (Order of Hernandez Covington, J.); *Carter v. Secretary*, M.D. Fla. No. 3:15-cv-1198, ECF No. 22 (Order of Corrigan, J.); *Stephens v. Secretary*, M.D. Fla. No. 3:08-cv-260, ECF No. 28 (Order of Corrigan, J.); *Wade v. Secretary*, M.D. Fla. No. 3:15-cv-200, ECF No. 26 (Order of Davis, J.); *Foster v. Secretary*, M.D. Fla. No. 6:06-cv-648, ECF No. 58 (Order of Antoon, J.); *Bowles v. Secretary*, M.D. Fla. No. 3:08-cv-791, ECF No. 36 (Order of Adams, J.).

**Exhibits Page 11**

No. 69 at 2.  The circumstances in Petitioner's case are such that there is no state court counsel at all.

Permitting representation by the CHU is in the interest of justice.  As this Court is aware, the CHU was established because of significant deficiencies relating to the provision of meaningful defense services in a number of capital cases in Florida, including a pervasive problem of missed filing deadlines.  Petitioner's *Atwell* deadline should not become part of that Florida history when the CHU is available and capable of initiating the matter and preserving Petitioner's rights in the capital case.  Allowing the CHU to represent Petitioner in state court will ensure that Petitioner is represented by counsel who is familiar with the facts of his case and the potential federal constitutional remedies afforded by an *Atwell* resentencing on the 1979 conviction.

The CHU should be allowed to pursue *Atwell* relief and to raise any issues arising from that proceeding that implicate the death sentence.

## VI.    Respondent's counsel in part does not oppose this motion, but has a limitation

In response to the CHU's request for her position on this motion, Respondent's counsel indicated that she does not object to the CHU receiving permission to seek relief under *Atwell* and *Miller*, but that Respondent does object to the CHU serving as resentencing counsel as the local public defender could be available.

**Exhibits Page 12**

CHU counsel represents the following to the Court and Respondent in order to address any concerns Respondent might have. It is the CHU's intent to pursue *Atwell* relief and to litigate any issues arising from the *Atwell* proceeding that might implicate the death sentence. As to the resentencing itself, the local public defender will need to conduct a review for possible conflicts and to then report whether that office will serve as counsel. If the local public defender will serve as resentencing counsel, the CHU will be happy to assist and consult, as in other cases where the CHU secured relief for clients, but has no intent to appear as resentencing counsel.

## VII.   Conclusion

The Court should issue an order permitting the CHU to pursue state-court relief under *Miller* and *Atwell*, and to litigate any issue arising from the *Atwell* proceeding that might implicate the death sentence.

Respectfully submitted,

/s/ Billy H. Nolas
Billy H. Nolas
Chief, Capital Habeas Unit
Sean Gunn
Kimberly Sharkey
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300

**Exhibits Page 13**

## <u>CERTIFICATE OF COMPLIANCE WITH<br>ATTORNEY CONFERENCE REQUIREMENT</u>

I hereby certify that I complied with the attorney-conference requirement set forth in Local Rule 7.1(B).   I contacted Assistant Attorney General Charmaine Millsaps, counsel for Respondent, regarding her position on this motion.   Ms. Millsaps's position is described at pages 11-12 of this motion.

<u>/s/ Billy H. Nolas</u>
Billy H. Nolas

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

I hereby certify that this motion contains 2,844 words, in compliance with Local Rule 7.1(F).

<u>/s/ Billy H. Nolas</u>
Billy H. Nolas

**Exhibits Page 14**

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DONALD DAVID DILLBECK,**

       **Petitioner,**

**v.**                             **Case No.  4:07cv388-MW**

**JULIE L. JONES, Secretary,
Florida Department of Corrections,**

       **Respondent.**
_____/

**ORDER GRANTING EMERGENCY/EXPEDITED MOTION
TO PERMIT CAPITAL HABEAS UNIT TO
<u>APPEAR IN STATE COURT</u>**

       This Court has considered, without hearing, Petitioner's Emergency/Expedited

Motion to Permit Capital Habeas Unit Counsel to Appear in State Court.  ECF No. 44.

The motion is **GRANTED**. The Capital Habeas Unit may pursue state court relief under

*Miller* and *Atwell*, and may litigate any issue arising from the *Atwell* proceeding that

might implicate the death penalty.

       **SO ORDERED on April 5, 2018.**

                                **s/Mark E. Walker_____**
                                **United States District Judge**

**Exhibits Page 16**

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DONALD DAVID DILLBECK,

     *Petitioner,*

v.                             CASE NO.: 4:07-cv-00388-MW

JAMES V. CROSBY,

     *Respondent.*

_____/

MOTION FOR CLARIFICATION OF ORDER AUTHORIZING THE CAPITAL
HABEAS UNIT TO APPEAR IN STATE COURT

On April 5, 2018, the Capital Habeas Unit of the Federal Public Defender Office for the Northern District (CHU-N) filed an emergency motion for authorization to appear in state court to raise a claim regarding a *Miller v. Alabama*, 567 U.S. 460 (2012), resentencing. This Court should clarify its authorization for the CHU-N to appear in state court as being limited to filing a motion for a *Miller* resentencing and a motion to appoint the Office of the Public Defender of the 20th Judicial Circuit to handle any *Miller* resentencing.

**Exhibits Page 18**

Facts and relevant procedural history

On April 11, 1979, Dillbeck murdered a deputy in Lee County, Florida, when he was a juvenile.  Dillbeck murdered Deputy Sheriff Lynn Hall by shooting him twice, once in the face and once in the back, with the deputy's own gun. (T. XIV 2195).  Dillbeck entered a plea to first-degree murder and was sentenced to life in prison with the possibility of parole.

Over a decade later, Dillbeck escaped from a work detail and murdered a woman while attempting to carjack her in the parking lot of the Tallahassee Mall.  Dillbeck was convicted of first-degree murder; armed robbery; and armed burglary for that crime.  Dillbeck was sentenced to death for the murder; to life for the armed robbery; and to another life for armed burglary.  The two life sentences are consecutive sentences. *Dillbeck v. State*, 882 So.2d 969, 971 (Fla. 2004).  Dillbeck was not a juvenile at the time of that crime; he was approximately 27 years old.  The prior murder conviction for shooting the deputy was used as an aggravating circumstance in the capital case.

In 2012, the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012).  The *Miller* Court held that a sentence of life without the possibility of parole for a defendant who committed the murder when he was a juvenile violated the Eighth Amendment requirement of individualized sentencing.  In 2016, the United States Supreme Court held

-2-

**Exhibits Page 19**

that *Miller* is retroactive. *Montgomery v. Louisiana*, 136 S.Ct. 718, 736 (2016).

On May 26, 2016, the Florida Supreme Court in *Atwell v. State*, 197 So.3d 1040 (Fla. 2016), held that even a life sentence of life with the possibility of parole for a defendant who committed the murder when he was a juvenile violated the Eighth Amendment because it is "virtually indistinguishable" from a sentence of life without parole. The Florida Supreme Court held that all such juvenile murderers were entitled to a resentencing in conformity with chapter 2014-220, Laws of Florida, which has been codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes. *Id.* at 1042-43. "Under that sentencing framework, the sentencing court is authorized to impose a sentence from 40 years to life imprisonment after considering youth-related sentencing factors." *Id.* at 1043.

On April 5, 2018, the CHU filed an "emergency/expedited motion to permit the capital habeas unit to appear in state court." (Doc. #44). On the same day, April 5, 2018, this Court granted the motion. (Doc. #45).

### Clarification of the State's position

The motion for authorization misstates the State's position. (Doc. #44 at 2). The State objects to the CHU having any role in state court other

**Exhibits Page 20**

than filing a motion for a *Miller/Atwell* resentencing in the state trial court and a motion to appoint the Office of the Public Defender of the 20th Judicial Circuit to handle any *Miller/Atwell* resentencing from that point forward.  And the only reason the State agreed to even this intervention by the CHU in state court was due to the looming deadline.

The motion for authorization states that, due to the deadline of May 26, 2018, there "is no other counsel reasonably available to initiate state proceedings." (Doc. # 44 at 1).  The motion stated that "Petitioner is in danger of procedurally forfeiting his right to *Atwell* resentencing" due to the May 26, 2018, deadline.  (Doc. # 44 at 6).  The only reason that Dillbeck is in danger of "forfeiting his right to *Atwell* resentencing" and the only reason that the motion had to be filed on an emergency basis was that CHU waited until the last month to file the motion.  The CHU has been federal habeas counsel for Dillbeck since February 11, 2016. (Doc. #38).  *Miller* was decided by the United States Supreme Court in 2012 and held retroactive in 2016; *Atwell* was decided by the Florida Supreme Court in May of 2016.  So, the legal basis for the *Miller/Atwell* resentencing has existed for over 22 months.  The motion could have been filed over a year earlier than it was filed.  Indeed, the CHU could have just coordinated with the appropriate public defender's office merely by making a phone call requesting that the state public defender file a motion for a *Miller/Atwell* resentencing,

**Exhibits Page 21**

precluding the necessity of filing any motion for authorization in federal court at all. The CHU's delay created the danger and the emergency.

### The Florida Public Defender is the appropriate attorney

The motion states that "the CHU is the most appropriate counsel" to seek *Miller/Atwell* resentencing for Dillbeck. (Doc. #44 at 7). No, the CHU is not the most appropriate counsel. It is the Office of the Public Defender of the 20th Judicial Circuit, not state postconviction counsel or federal habeas counsel, who is the most appropriate counsel to seek *Miller/Atwell* relief. The Office of the Public Defender of the 20th Judicial Circuit which covers Lee County where the murder of the deputy occurred is the appropriate office to litigate any and all claims relating to the *Miller/Atwell* resentencing.[1]

_____

[1] The motion refers to a possible conflict of interest that the Florida public defender may have. (Doc. #44 at 12). A conflict of interest is unlikely to arise in this case because there are no co-defendants. But even if the Public Defender of the 20th Judicial Circuit has a conflict, then the Office of Criminal Conflict and Civil Regional Counsel will be appointed. § 27.511, Fla. Stat. (2018); *Lewis v. Leon County*, 15 So.3d 777, 779 (Fla. 1st DCA 2009) (explaining that the Florida Legislature in 2007 created the Office of Criminal Conflict and Civil Regional Counsel and that Regional Conflict Counsel serve as court-appointed counsel to represent indigent defendants, primarily in cases where public defenders have conflicts of interest). Florida, in effect, has a back-up public defender's office. If both the elected PD's office and Conflict Counsel's office have conflicts, then an attorney will be appointed from the registry list. *Lewis*, 15 So.3d at 779. Regardless of any conflict within the particular Public Defender's Office, Florida appoints

**Exhibits Page 22**

Appointing the CHU to do anything more than file a motion for a *Miller/Atwell* resentencing and a motion for the appointment of the state public defender for the resentencing violates both Supreme Court precedent of *Harbison v. Bell*, 556 U.S. 180, 189 (2009), as well as the Eleventh Circuit precedent of *Lugo v. Sec'y, Fla. Dept. of Corr.*, 750 F.3d 1198, 1214 (11th Cir. 2014), and *Gary v. Warden*, 686 F.3d 1261, 1277 (11th Cir. 2012). If the state court provides counsel, which all states are constitutionally required to do under *Gideon v. Wainwright*, 372 U.S. 335 (1963), for resentencings, the involvement of federal habeas counsel is not proper under the controlling precedent. Florida provides counsel for resentencings which precludes the appointment of the CHU as some sort of legal second chair. Authorizing the CHU to represent Dillbeck in state court for anything beyond the filing of the two initial motions presents just the type of entanglement of federal actors in state court that the Eleventh Circuit warned against in *Gary*. The elected Public Defender does not need federal habeas counsel's supervision litigating any matter related to a *Miller/Atwell* resentencing. Indeed, normally such an office would have more familiarity with, and experience handling *Atwell* resentencings under the applicable Florida statute than federal habeas counsel would. A Florida public

---

an attorney for all defendants at all *Miller/Atwell* resentencings.

**Exhibits Page 23**

defender is the proper attorney to litigate any issues related to the resentencing, not the federal CHU.

### Concurrent sentencing doctrine

The motion refers to seeking authorization to "pursue *Atwell* relief." (Doc. #44 at 11,12). The only real issue that is likely to arise in state court regarding any *Miller/Atwell* resentencing is the concurrent sentencing doctrine. Under the concurrent sentence doctrine, if a prisoner is serving two or more concurrent sentences, and is attacking a sentence that is equal to, or lesser than, the other sentence, the reviewing court will decline to review the lesser sentence in the interest of judicial economy.  *In re Williams*, 826 F.3d 1351, 1356 (11th Cir. 2016) (applying the concurrent sentencing doctrine in the habeas context and denying permission to file a successive habeas petition challenging petitioner's ACCA status because he received a concurrent mandatory life sentence on another count  that "was unrelated to his ACCA status" citing *United States v. Bradley*, 644 F.3d 1213, 1293 (11th Cir. 2011); *Brown v. Warden, FCC Coleman-Low,* 817 F.3d 1278, 1284-85 (11th Cir. 2016); and *United States v. Pacchioli*, 718 F.3d 1294, 1308 (11th Cir. 2013)).  Florida limits the doctrine to challenges to sentences only.  If the challenge includes the convictions, the doctrine does not apply.  But Dillbeck would be attacking only his sentence for the prior

**Exhibits Page 24**

murder, not the underlying conviction for the prior murder of the deputy. A *Miller/Atwell* resentencing is a pure sentencing matter.

Dillbeck has a death sentence in this case.  And Dillbeck's death sentence was recently reaffirmed by the Florida Supreme Court from an attack based on *Hurst v. Florida*, 136 S.Ct. 616 (2016), and *Hurst v. State*, 202 So.3d 40 (Fla. 2016).  *Dillbeck v. State*, 234 So.3d 558 (Fla. 2018).  But not only does Dilleck have a death sentence for another murder but he also has two other consecutive life sentences in addition to the sentence being attacked on *Miller/Atwell* grounds.  Dillbeck was not a juvenile at the time he committed the two offenses that resulted in the two other life sentences in this capital case.  Neither of those life sentences is subject to attack on the basis of *Miller* or *Atwell* because Dillbeck was an adult at the time of these offenses.

Not only would the death sentence have to be vacated but it would have to be reduced to a sentence that was less than life for the sentence in the prior murder case to matter.  And not only would that have to occur but both life sentences imposed as part of the capital case would have be reduced to a sentence that was less than life as well, for the life sentence for the murder of the deputy to matter to the length of time Dillbeck would spend in prison.  Three sentences would have to be reduced for the fourth sentence to matter.

**Exhibits Page 25**

Dillbeck will either be executed or spend the rest of his life in prison due to the other consecutive life sentences regardless of the sentence for the prior murder of the deputy.  Under the concurrent sentencing doctrine, any *Miller/Atwell* resentencing is a complete waste of time because regardless of the outcome of the resentencing, Dillbeck will still be under a sentence of death and will still have two consecutive life sentences to serve.  So, the concurrent sentence doctrine should apply.

But the Office of the Public Defender of the 20th Judicial Circuit is the appropriate attorney to litigate the issue of the concurrent sentencing doctrine as well as all other *Miller/Atwell* issues, not the federal CHU.  The state public defender's office is quite capable of arguing the concurrent sentencing doctrine issue and any other issues that may arise without the supervision of the federal CHU.

### No possibility of impacting the capital habeas case

Opposing counsel refers to the resentencing in the prior conviction case as possibly giving rise to issues in the capital case as a basis for his authorization to appear in state court.  (Doc. #44 at 5).  But there is no real possibility of the non-capital case giving rise to any issue in the capital case. All the convictions and sentences in the capital case have been affirmed on direct appeal by the Florida Supreme Court, affirmed in state postconviction

**Exhibits Page 26**

proceedings by the Florida Supreme Court, affirmed by the Florida Supreme Court again after a *Hurst* challenge, as well as having federal habeas relief denied both by this Court and the Eleventh Circuit. *Dillbeck v. State*, 643 So.2d 1027 (Fla. 1994); *Dillbeck v. State*, 882 So.2d 969 (Fla. 2004); *Dillbeck v. State*, 964 So.2d 95 (Fla. 2007); *Dillbeck v. State*, 234 So.3d 558 (Fla. 2018) (rejecting *Hurst* claims); *Dillbeck v. McNeil*, 4:07-CV-388/SPM, 2010 WL 419401 (N.D. Fla. 2010); *Dillbeck v. McNeil*, 10-11042-P (11th Cir.) (denying COA).  Any future litigation in the capital case would be successive litigation.

But the Eleventh Circuit does not permit successive habeas petitions to be filed that involve the concurrent sentencing doctrine. *In re Williams*, 826 F.3d 1351, 1356 (11th Cir. 2016).  The Eleventh Circuit will not entertain the claim in light of the concurrent sentencing doctrine even if the Florida courts are willing to do so.  Any other possible issue would have to be significant enough for the Eleventh Circuit to grant permission for Dillbeck to file a successive habeas petition.  As this Court is aware, the number of issues that the Eleventh Circuit authorizes successive habeas petitions are few and far between.

The CHU cites to a possible *Johnson v. Mississippi*, 486 U.S. 578 (1988), claim.  (Doc. #44 at 6).  In *Johnson*, the United States Supreme

**Exhibits Page 27**

Court held that if a prior conviction is used as an aggravating circumstance to support the death penalty is later vacated, the death sentence premised on now legally invalid prior conviction violates the Eighth Amendment because it was the result of materially inaccurate information. But Dillbeck would only be challenging his life sentence for the prior murder in any *Miller /Atwell* resentencing, not the underlying conviction. To raise a valid claim under *Johnson*, the prior **conviction** must be vacated. *Stano v. Butterworth*, 51 F.3d 942, 946-47 (11th Cir. 1995) (rejecting a *Johnson* claim where the panel opinion vacating the convictions was itself vacated en banc, resulting in affirmance of the convictions); *Carter v. Chappell*, 2013 WL 1120657, *128 (S.D. Cal. 2013) (concluding that *Johnson* did not apply because neither the Oregon nor the Alaska conviction has been set aside); *Wickham v. State*, 124 So.3d 841, 864 (Fla. 2013) (rejecting a *Johnson v. Mississippi* claim because the defendant's conviction had not been "vacated or set aside" and explaining to state a valid claim under *Johnson,* "a defendant must show that the conviction on which the prior violent felony aggravator is based has been reversed" citing *Phillips v. State*, 894 So.2d 28, 36 (Fla. 2004)). A mere resentencing for the prior conviction cannot form the basis of a valid *Johnson* claim. The length of the sentence is not relevant to validity of a prior conviction used as a prior violent felony aggravating

**Exhibits Page 28**

circumstance.   Regardless of whether Dilleck is granted a *Miller/Atwell* resentencing at which his life sentence is reduced or not, the use of the prior murder conviction as an aggravator remains valid and not subject to any *Johnson* attack in either state court or federal habeas court.

That is equally true of any process right to be sentenced using materially accurate information established in *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972).  (Doc. #44 at 6).  Dillbeck was sentenced in the capital case based on the accurate information that he had killed before and a *Miller/Atwell* resentencing does not change the accuracy of that calculus in any manner.   The prior violent felony aggravator is based on a recidivism rationale.   But the length of the sentence for the prior criminal conduct is irrelevant to the recidivism rationale; it is only the conviction that matters.   There is no possible *Townsend* or *Tucker* claim that will arise in the capital case from the *Miller/Atwell* resentencing in the non-capital case.

Because the conviction itself would remain valid, it does not provide a basis for the involvement of the CHU and no bridge for the CHU to appear in state court to litigate in a non-capital case.

**This Court's order**

The CHU's motion for authorization is unclear as to exactly what role

**Exhibits Page 29**

the CHU seeks to perform in state court.  The motion states that the CHU's intent is to "pursue *Atwell* relief" but also states that the CHU has "no intent to appear as resentencing counsel." (Doc. #44 at 12).

This Court's order is also not clear regarding the scope of the CHU's authorization to appear in state court.  The order states: "The Capital Habeas Unit may pursue state court relief under *Miller* and *Atwell*, and may litigate any issue arising from the *Atwell* proceeding that might implicate the death penalty." (Doc. #45).  The order seems to allow CHU to appear as a legal second chair in state court to litigate substantive issues regarding the *Miller/Atwell* resentencing, such as the concurrent sentencing doctrine.  It is the Florida Public Defender's Office, not the federal public defender, that should litigate any and all issues relating to the resentencing.

This Court should clarify its order authorizing the CHU to appear in state court is limited to filing a motion for a *Miller/Atwell* resentencing and a motion for the appointment the Office of the Public Defender of the 20th Judicial Circuit to handle that resentencing. This Court should not authorize any involvement in state court by the CHU beyond that necessary to protect Dillbeck's right against a timeliness problem.  That is the CHU's stated rationale for the necessity of their involvement in state court and the filing of those two motions accomplishes that purpose.  This Court's authorization should likewise be limited to that objective.  This Court

**Exhibits Page 30**

should not authorize the CHU to appear beyond those initial steps and it should warn the CHU not to create emergency situations and then file emergency motions.

Accordingly, this Court should clarify its authorization to appear in state court is limited to filing a motion for a *Miller/Atwell* resentencing and a motion for the appointment of state resentencing counsel to handle the resentencing.

**Exhibits Page 31**

Respectfully submitted,

PAMELA JO BONDI.
ATTORNEY GENERAL

/s/ Charmaine M. Millsaps
CHARMAINE M. MILLSAPS
SENIOR ASSISTANT ATTORNEY GENERAL
FLORIDA BAR NO. 0989134
OFFICE OF THE ATTORNEY GENERAL
THE CAPITOL,PL-01
TALLAHASSEE, FL 32399-1050
(850) 414-3300
primary email:
capapp@myfloridalegal.com
secondary email:
charmaine.millsaps@myfloridalegal.com

COUNSEL FOR RESPONDENT

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing

MOTION FOR CLARIFICATION OF ORDER AUTHORIZING THE CAPITAL

HABEAS UNIT TO APPEAR IN STATE COURT has been furnished by

electronic mail via CM/ECF to Billy H. Nolas, Chief of the Capital Habeas

Unit of the Federal Public Defender's Office, Northern District of Florida,

227 N. Bronough Street, Suite 4200, Tallahassee, FL 32301-1300; phone:

(850) 942-8818; email: billy_nolas@fd.org this   9th   day of April, 2018.

/s/ Charmaine M. Millsaps
CHARMAINE M. MILLSAPS
ATTORNEY FOR RESPONDENT

-15-

**Exhibits Page 32**

CERTIFICATE OF WORD COURT

I HEREBY CERTIFY that this pleading contains 3,075 words, excluding the case style, signature blocks, and certificates, according to Wordperfect's word count function, which is under the 8,000 word limit for memorandum under Northern District local rule 7.1(F).

*/s/ Charmaine M. Millsaps*
Charmaine M. Millsaps
Senior Assistant Attorney General
COUNSEL FOR RESPONDENT

-16-

**Exhibits Page 33**

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

DONALD DAVID DILLBECK,

                Petitioner,

v.                                  Case No. 4:07-cv-388-MW

JULIE L. JONES, SECRETARY,        **CAPITAL CASE**
FLORIDA DEPARTMENT
OF CORRECTIONS,

                Respondent.

_____/

**PETITIONER'S RESPONSE TO RESPONDENT'S MOTION
FOR CLARIFICATION OF ORDER AUTHORIZING THE
CAPITAL HABEAS UNIT TO APPEAR IN STATE COURT**

      Respondent has moved for "clarification" of this Court's April 5, 2018, order

authorizing the CHU to "pursue state court relief for Petitioner under *Miller* and

*Atwell*, and to litigate any issue arising from the *Atwell* proceeding that may

implicate the death penalty."  ECF Nos. 45 (Order), 46 (Motion).  Petitioner submits

that no clarification is needed, and that modification of the April 5 order in the

manner Respondent suggests would jeopardize Petitioner's rights.  Respondent's

motion should be denied.[1]

---

[1] After an exchange of emails, CHU counsel believed that the CHU understood and
accurately represented Respondent's position and did not anticipate Respondent's
current motion.

**Exhibits Page 35**

**I.**    **As stated previously, the CHU does not intend to appear as resentencing counsel, but the Court should not, as Respondent suggests, limit the CHU's involvement to filing two motions**

Respondent suggests modifying the April 5 order to reflect that the CHU shall have no "role in state court other than filing a motion for a *Miller*/*Atwell* resentencing in the state trial court and a motion to appoint the Office of the Public Defender of the 20th Judicial Circuit to handle any *Miller*/*Atwell* resentencing from that point forward." ECF No. 46 at 4. In other words, Respondent believes that the CHU should be directed to file two motions in state court to initiate *Miller*/*Atwell* proceedings, and then wash its hands of the matter entirely, regardless of whether the local public defender or other non-CHU counsel agrees to undertake the *Miller*/*Atwell* litigation and preserve Petitioner's rights in the capital case. This suggestion for language micromanaging the *Atwell*/*Miller* litigation is not sound.

As the CHU stated in its motion for authorization to appear in state court, the CHU "has no intent to appear as resentencing counsel." ECF No. 44 at 12. Rather, "[i]t is the CHU's intent to pursue *Atwell* relief and to litigate any issues arising from the *Atwell* proceeding that might implicate the death sentence." *Id.* The CHU stated that if the local public defender's office will serve as resentencing counsel, as Respondent suggests, the CHU "will be happy to assist and consult." *Id.*

However, the CHU also noted that there is no guarantee that the public defender's office or another state attorney will agree to the representation. For

**Exhibits Page 36**

example, the public defender's office "will need to conduct a review for possible conflicts and then report whether that office will serve as counsel." *Id.* In the event that the public defender or another non-CHU counsel will not represent Petitioner, the CHU should not be restricted from further involvement. It would violate the CHU's duty of representation under § 3599 to file a motion for *Atwell*/*Miller* resentencing and then simply walk away, leaving Petitioner vulnerable. And the CHU should follow up with potential issues affecting the capital case, as stated in this Court's order. The CHU has a duty to ensure that Petitioner's rights in the capital case are not forfeited. The April 5 order allows the CHU to fulfill that duty and should not be modified—or "clarified"—to impose harmful restrictions.

## II. As Judge Hinkle has observed, while federal courts have a role in authorizing the CHU to appear in state court under § 3599, they should not micromanage state-court procedures in the way Respondent suggests

Respondent asks this Court to address whether the Florida courts, as a matter of state law, should reject an appearance by the CHU and appoint some other counsel for Petitioner's *Miller*/*Atwell* litigation. ECF No. 46 at 5-7. Contrary to Respondent's suggestion, this Court's role under § 3599 does not include interpreting state law to determine whether some state agency, public defender office, or private attorney is more appropriate than the CHU to represent Petitioner during *Atwell*/*Miller* litigation. This Court's role is to determine whether granting the CHU leave to litigate issues in state court arising from *Atwell*/*Miller* resentencing

**Exhibits Page 37**

that may impact Petitioner's death sentence is necessary for the CHU to fulfill its

duty of representation under § 3599.[2]

Judge Hinkle observed the following when presented with arguments similar

to those Respondent makes here:

> I have a role in appointing an attorney who will be compensated from
> federal funds and determining the scope of the federally funded
> appointment. I have fulfilled that role through the May 27 order
> [authorizing the CHU to appear in state court]. The order impacts
> federal funding but does not control state procedures in any respect.
> The state court has no role in addressing federal funding, but the state
> court's authority over state-court procedures, including appearances by
> attorneys, is plenary. On that issue like all others, the state court needs
> neither my help nor my interference; any effort by me to control state-
> court procedures would be improper. There is no obvious reason why
> the state court would prohibit an appearance by a well-qualified [CHU
> counsel, the undersigned herein, who is a] member of the Florida Bar,
> and indeed no obvious reason why the respondent would oppose such
> an appearance. But those are matters for the state court.

*Guardado v. Jones*, 4:15-cv-256-RH, ECF No. 24 at 2 (N.D. Fla. June 8, 2016).

This Court was correct in the April 5 order to authorize the CHU to "pursue

state court relief for Petitioner under *Miller* and *Atwell*, and to litigate any issue

arising from the *Atwell* proceeding that may implicate the death penalty."  ECF No.

45 at 1.  As Petitioner stated in his original motion, he currently "has no other counsel

available to represent him in seeking resentencing on the 1979 conviction by May

---

[2] As stated in the CHU's original motion, it is unclear whether federal court
authorization is even necessary in this matter, but CHU counsel sought authorization
in an abundance of caution.

**Exhibits Page 38**

26, 2018." ECF No. 44 at 7-8. It was appropriate under § 3599 for this Court to authorize the CHU to preserve Petitioner's rights in the capital case that may arise from *Atwell/Miller* resentencing. As to whether the state courts should require some other attorney to represent Petitioner instead of the CHU, "the state court's authority over state-court procedures, including appearances by attorneys, is plenary." *Guardado*, 4:15-cv-256-RH, ECF No. 24 at 2.

### III. It would be premature for the Court's order to address the substantive legal arguments Respondent makes regarding the impact of the prospective *Atwell/Miller* litigation on Petitioner's capital case

Respondent suggests that this Court modify the April 5 order to address a number of substantive legal arguments regarding the impact of the prospective *Atwell/Miller* litigation on Petitioner's capital case. *See* ECF No. 46 at 7-12 (discussing the merits of arguments under the concurrent sentencing doctrine, the federal habeas statute, and various United States Supreme Court precedents). But as the CHU previously explained, it would be premature for the Court to address those arguments in the context of deciding whether the CHU should be able to ensure that Petitioner does not forfeit his right to *Atwell* resentencing and any resulting federal constitutional challenges to his death sentence. ECF No. 46 at 6-7. As the CHU described, there are legitimate arguments that may result from Petitioner being resentenced to life on a conviction that served as an aggravating factor during the penalty phase of his capital trial. Whether such arguments will ultimately prevail is

**Exhibits Page 39**

a question for another day. Because resentencing under *Atwell*/*Miller* is not wholly futile, the CHU should be permitted as § 3599 counsel to ensure that Petitioner's rights are fully preserved.

Respondent appears to agree that resentencing under *Atwell*/*Miller* is appropriate for Petitioner, even if Respondent believes that it would not ultimately give rise to any successful claims in the capital case. Respondent states that, because of the looming deadline, she does not object to the CHU "filing a motion for *Miller*/*Atwell* resentencing in the state trial court," as well as a motion to appoint the local public defender to handle the resentencing. ECF No. 46 at 3-4. If Respondent's position were that any claim in the capital case arising from *Atwell*/*Miller* litigation would be wholly futile, Respondent would oppose any appearance by the CHU in state court, as she has done in other cases where she has argued futility. *See, e.g.*, *Guardado*, 4:15-cv-256-RH, ECF No. 14 at 8-10 (arguing that the CHU should not be authorized to appear in state court to litigate *Hurst* claims). Instead, Respondent appropriately acknowledges the legitimacy of the CHU ensuring that Petitioner meets the looming *Atwell*/*Miller* deadline. ECF No. 46 at 4 ("[T]he only reason the State agreed to even this intervention by the CHU in state court was due to the looming deadline."). As Respondent does not argue that *Atwell*/*Miller* litigation is wholly futile as it relates to the CHU's role as § 3599 counsel, this Court should not go further to address the merits of Respondent's

**Exhibits Page 40**

arguments regarding the capital case at this time. Those arguments should be addressed after the *Atwell*/*Miller* litigation has concluded and Petitioner has sought relief in the capital case.

## IV. Conclusion

This Court's April 5 order is clear and correct. The CHU believes it is so clear and correct that the Court may wish to deny Respondent's motion without a hearing. CHU counsel is, however, happy to appear and address the matter as currently scheduled if the Court would like. Respondent's motion for "clarification" should be denied.

Respectfully submitted,

/s/ Billy H. Nolas
Billy H. Nolas
Chief, Capital Habeas Unit
Sean Gunn
Kimberly Sharkey
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300
(850) 942-8818

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I hereby certify that this motion contains 1,405 words, in compliance with Local Rule 7.1(F).

/s/ Billy H. Nolas
Billy H. Nolas

7

**Exhibits Page 41**

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DONALD DAVID DILLBECK,**

            **Petitioner,**              **CAPITAL CASE**

**v.**                             **Case No.  4:07cv388-MW**

**JULIE L. JONES, Secretary,
Florida Department of Corrections,**

            **Respondent.**

_____/

## ORDER DENYING MOTION FOR CLARIFICATION

      This Court has considered, without hearing, Respondent's Motion for Clarification of Order Authorizing the Capital Habeas Unit to Appear in State Court, along with the Response filed by Petitioner.  ECF Nos. 46 and 49.  This Court finds no clarification or limitation of its prior Order Granting Emergency/Expedited Motion to Permit Capital Habeas Unit to Appear in State Court, ECF No. 45, is necessary.  For this reason,

      **IT IS ORDERED:**

      The motion for clarification is **DENIED**.  The Clerk shall cancel the hearing now scheduled for April 18, 2018.

      **SO ORDERED on April 10, 2018.**

                           **s/Mark E. Walker_____
United States District Judge**

**Exhibits Page 43**

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

DONALD DAVID DILLBECK,

        Petitioner,

v.                              Case No. 4:07-cv-388-MW

JULIE L. JONES, SECRETARY,        **CAPITAL CASE**
FLORIDA DEPARTMENT
OF CORRECTIONS,

        Respondent.
_____/

**NOTICE OF MOOTNESS AND MOTION TO END CAPITAL HABEAS
UNIT'S AUTHORIZATION TO APPEAR IN STATE COURT**

Petitioner notifies the Court that the issue addressed by the Court's April 5, 2018 order, which authorized the Capital Habeas Unit ("CHU") to appear in state court to preserve potential challenges to Petitioner's death sentence, is moot because the CHU secured non-CHU counsel who will undertake the state-court litigation.

Petitioner also moves to formally end the CHU's authorization to appear in state court on the *Miller*/*Atwell* litigation in order to ensure that the CHU is not compelled to expend unnecessary resources on a moot appeal filed by Respondent.

**I.    Background**

In its April 5 order, this Court granted the CHU's motion for authorization to initiate state-court proceedings for Petitioner on a time-sensitive matter:

1

**Exhibits Page 45**

resentencing on a prior-felony conviction in light of *Miller v. Alabama*, 567 U.S. 460 (2012), and *Atwell v. State*, 197 So. 3d 1040, 1041 (Fla. 2016). ECF No. 45. The CHU sought permission to preserve Petitioner's rights because there was no other counsel available to do so by the impending May 2018 deadline, and resentencing on the prior felony could implicate federal constitutional arguments regarding Petitioner's death sentence. ECF No. 44.

After this Court granted the CHU authorization to preserve Petitioner's state rights under *Miller/Atwell*, Respondent filed a motion to "clarify" and restrict the scope of the April 5 order, which this Court denied. ECF Nos. 46, 50. On April 24, 2018, Respondent filed a notice of appeal from the April 5 order. ECF No. 53.

## II.   The issue addressed by the April 5 order is moot because non-CHU counsel is undertaking the state-court litigation for Petitioner

The issue of the CHU appearing in state court for the *Miller/Atwell* litigation is moot. Before and after this Court authorized the CHU to appear in state court, the CHU continued its efforts to secure non-CHU counsel for the state-court *Miller/Atwell* litigation. Earlier this week, Roseanne Eckert, a preeminent Florida expert on *Miller/Atwell* resentencing, agreed to initiate Petitioner's state proceeding.

Ms. Eckert is the Coordinating Attorney for the Florida Juvenile Resentencing and Review Project, which is part of the Florida Center for Capital Representation at Florida International University College of Law. She moderates a listserv for attorneys and legal teams representing clients in proceedings arising from *Miller* and

**Exhibits Page 46**

*Atwell*.  She also consults, trains, and guides these legal teams through resentencings.  Ms. Eckert, a member of the Florida Bar since 1996, is a board-certified criminal trial lawyer with extensive experience.  The CHU is satisfied that Ms. Eckert will expertly handle Petitioner's state litigation and grateful for her agreement to do so.

As a result of Ms. Eckert's involvement, the CHU has not appeared in state court for Petitioner on the *Miller/Atwell* matter and no longer needs the authorization granted by this Court's April 5 order.  Petitioner's right to resentencing under *Miller/Atwell* will be adequately preserved through Ms. Eckert's representation in state court.  Accordingly, the issue addressed by the April 5 order is moot.

**III.   The Court should end the CHU's authorization to appear in state court, and this will ensure that the CHU is not compelled to unnecessarily expend limited time and resources on a moot appeal of the April 5 order**

Respondent's counsel did not contact the CHU before filing a notice of appeal from the April 5 order.  *See* ECF No. 53.  If she had, the CHU would have informed her of Ms. Eckert's involvement and the mootness of the April 5 order.  Petitioner now moves to formally end the CHU's authorization to appear in state court.  This will ensure that the CHU is not compelled to expend limited time and resources on a moot appeal of the April 5 order.

The Court could end the CHU's authorization in two ways.  The Court could issue a new order stating that the CHU's authorization to appear in state court on the *Miller/Atwell* matter is withdrawn due to Ms. Eckert's agreement to undertake the

**Exhibits Page 47**

state representation.  Alternatively, the Court could vacate the April 5 order pursuant to Federal Rule of Civil Procedure 60(b), which allows the Court to vacate its own orders for any reason that justifies relief.  *See* Fed. R. Civ. P. 60(b)(6).

Although the filing of a notice of appeal generally divests the district court of jurisdiction over the issues on appeal, an order ending the CHU's authorization given Ms. Eckert's representation of Petitioner in state court would not reach any potential issue Respondent seeks to appeal.  Respondent has appealed whether the April 5 order correctly authorized the CHU to appear in state court as part of its appointment under 18 U.S.C. § 3599 based on the unavailability of other state counsel for the *Miller*/*Atwell* litigation.  This Court maintains jurisdiction to recognize that those circumstances are no longer present and to end the CHU's authorization.  *See, e.g.*, *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999) (holding general rule that filing of a notice of appeal divests district court of jurisdiction "does not apply to collateral matters not affecting the questions presented on appeal."); *cf. Resolution Trust Corp. v. Smith*, 53 F.3d 72, 76 (5th Cir. 1995) (district court maintains jurisdiction to order stays and modify injunctive relief).  Moreover, the Eleventh Circuit has identified exceptions to the general rule that a notice of appeal divests the district court of jurisdiction, such as when the appeal is frivolous or jurisdictionally defective, as Respondent's moot appeal is here.  *See, e.g.*, *United*

4

**Exhibits Page 48**

*States v. Maduno*, 40 F.3d 1212, 1217-18 (11th Cir. 1994); *cf. United States v. Hitchmon*, 602 F.3d 689, 691 (5th Cir. 1979).

Respondent's appeal is moot because there is no relief that can now be granted to Respondent by the Eleventh Circuit that would not constitute an advisory opinion. An order by this Court ending the CHU's authorization will promote judicial efficiency by quickly alerting the Eleventh Circuit of the April 5 order's mootness, rather than requiring unnecessary appellate briefing by the parties on the issue of mootness or otherwise. This will also ensure that the CHU's resources are focused on representation of indigent death-row clients, many of whom are subject to imminent death warrant, rather than on a moot appeal over whether this Court rightly permitted a state-court appearance by the CHU that will not occur.

**IV. Respondent has informed CHU counsel that she opposes ending the CHU's authorization to appear in state court, despite seeking the same relief on appeal**

In accordance with the Local Rules, CHU counsel contacted Respondent's counsel by email to ascertain her position on ending the CHU's authorization to appear in state court. *See* Local Rule 7.1(B) (requiring an attorney for the moving party to "attempt in good faith to resolve the issue through a meaningful conference with an attorney for the adverse party" before filing a motion).

Respondent's counsel informed the CHU that she now opposes this Court's ending the CHU's authorization to appear in state court, despite her opposition to

**Exhibits Page 49**

granting the CHU permission to appear in state court in the first place, and despite

Respondent seeking the same relief—ending the CHU's authorization to appear in

state court pursuant to the April 5 order—from the Eleventh Circuit on appeal.

## V.    Conclusion

The Court should end the CHU's authorization to appear in state court.

Respectfully submitted,

/s/ Billy H. Nolas
Billy H. Nolas
Chief, Capital Habeas Unit
Sean Gunn
Kimberly Sharkey
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300

## CERTIFICATE OF COMPLIANCE WITH
## ATTORNEY CONFERENCE REQUIREMENT

I hereby certify that I complied with the attorney-conference requirement set forth in Local Rule 7.1(B).   I contacted Assistant Attorney General Charmaine Millsaps, counsel for Respondent, regarding her position on this notice and motion. Ms. Millsaps's position is described at pages 5-6 of this filing.

/s/ Billy H. Nolas
Billy H. Nolas

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I hereby certify that this notice and motion contains 1,214 words, in compliance with Local Rule 7.1(F).

/s/ Billy H. Nolas
Billy H. Nolas

**Exhibits Page 50**

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

DONALD DAVID DILLBECK,

        Petitioner,

v.                                 Case No. 4:07-cv-388-MW

JULIE L. JONES, SECRETARY,        **CAPITAL CASE**
FLORIDA DEPARTMENT
OF CORRECTIONS,

        Respondent.

_____/

**NOTICE OF STATE-COURT FILING**

Petitioner provides notice that on April 27, 2018, Roseanne Eckert of Florida International University College of Law filed the attached motion for resentencing under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Atwell v. State*, 197 So. 3d 1040, 1041 (Fla. 2016), on Petitioner's behalf in the Circuit Court for the Twentieth Judicial Circuit. Ms. Eckert's filing alleviated the CHU's concern about the pressing May 2018 filing date in state court. *See* ECF No. 44.

As Petitioner described in his April 27, 2018 notice of mootness and motion to end the CHU's authorization to appear in state court, ECF No. 56, Ms. Eckert's involvement moots the issue addressed by this Court's April 5, 2018 order authorizing the CHU to appear in state court. The state-court *Miller/Atwell* filing is attached hereto.

1

**Exhibits Page 52**

Respectfully submitted,

/s/ Billy H. Nolas
Billy H. Nolas
Chief, Capital Habeas Unit
Sean Gunn
Kimberly Sharkey
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300

**Exhibits Page 53**

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA**

**STATE OF FLORIDA**,

      Plaintiff,

v.                                                **Case No.: 79-335-CF**

**DONALD DAVID DILLBECK**,

      Defendant.

_____/

**MOTION TO CORRECT ILLEGAL SENTENCE**

The Defendant, Donald David Dillbeck, by and through undersigned counsel, respectfully files this Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), alleging that his life sentence imposed after a conviction of first-degree murder, where the crime occurred at a time when Mr. Dillbeck was a juvenile, is unconstitutional under *Atwell v. State*, 197 So. 3d 1040 (Fla. 2016) and *Miller v. Alabama*, 567 U.S. 460 (2012).

**RELEVANT PROCEDURAL HISTORY**

In April 1979, at the age of fifteen, Mr. Dillbeck was arrested and charged with first-degree murder. On June 6, 1979, sixty-one days after his arrest and two weeks after turning sixteen, Mr. Dillbeck pleaded guilty to the charge as part of an agreement to avoid the death penalty. The trial court sentenced Mr. Dillbeck to life in prison, with the mandatory requirement that he serve twenty-five years before becoming eligible for parole.

On September 29, 1981, Mr. Dillbeck filed a *pro se* motion for post-conviction relief seeking to challenge the voluntariness of the guilty plea. The post-conviction court denied relief without an evidentiary hearing on October 8, 1981.

**Exhibits Page 54**

Mr. Dillbeck now files this Rule 3.800(a) motion[1] and asserts that  his juvenile life sentence, which is clear from the face of the trial record, is *per se* unconstitutional under *Miller v. Alabama* and *Atwell v. Florida* and respectfully requests that this Court immediately issue an order vacating his life sentence and granting a  resentencing hearing.

## ARGUMENT

The Eighth  Amendment's  prohibition  of  cruel  and  unusual  punishment "guarantees individuals  the  right  not  to  be  subjected  to  excessive  sanctions." *Roper v. Simmons,* 543 U.S. 551, 560 (2005) (barring the death penalty for juvenile offenders under the age of 18). That right, the United States Supreme Court stated, "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned'" to both the offender and the offense. *Id.* (quoting *Weems v. United States,* 217 U.S. 349 (1910)). The Court noted "[t]he concept of proportionality is central to the Eighth Amendment." *Graham v. Florida,* 560 U.S. 48, 59 (2010) (prohibiting an imposition of life without parole on a juvenile offender who did not commit homicide). The Court requires that Eighth Amendment concerns be considered less through a historical prism than according to "'the evolving standards of decency that mark the progress of a maturing society.'"  *Estelle v. Gamble,* 429 U.S. 97, 102 (quoting *Trop v. Dulles,* 356 U.S. 86, 101 (1958) (plurality opinion)).

---

[1]   This *Miller/Atwell* claim is brought forth in a Rule 3.800(a) Motion to Correct Illegal Sentence, because the illegality and unconstitutional nature of the sentence can be deduced from the face of the record without the need for an evidentiary hearing. *See* Fla. R. Crim. P. 3.800(a)(1); *Brooks v. State*, 969 So. 2d 238, 242 (Fla. 2007) ("The good news is that, unlike the other motions, [a Rule 3.800(a) motion] may be raised 'at any time.'  The bad news is that, because the error may be raised at any time, no evidentiary hearing is allowed. Instead, both the error and the defendant's entitlement to relief must be evident from the face of the record and the applicable law."). Undersigned counsel has discussed this motion on the phone with Mr. Dillbeck and can state that it is being filed in good faith. In an abundance of caution, a sworn verification in accordance with Florida Rule of Criminal Procedure 3.850 will be submitted in the near future.

2

**Exhibits Page 55**

Following the "evolving standards of decency" precedent set forth in *Roper* and *Graham*, the Court held in *Miller* that mandatory life imprisonment without parole for those under the age of 18 at the time of the offense violates the Eighth Amendment's prohibition on cruel and unusual punishments. *Miller*, 567 U.S. at 465. The Florida Supreme Court ruled that *Miller* was retroactive,[2] *Falcon v. State*, 162 So. 3d 954 (2015), and subsequently expanded *Miller* to life with the possibility of parole sentences. *Atwell*, 197 So. 3d at 1041 (holding that, in Florida, juvenile life with the possibility of parole sentences are "virtually indistinguishable from [] sentence[s] of life without parole" and are "therefore unconstitutional"). The court noted that, although the pre-1994 first-degree murder statute provided for a life sentence with parole eligibility, "it remained a mandatory sentence that treated juveniles exactly like adults and precluded any individualized sentencing consideration." *Id.* at 1042 (explaining that the "current parole process similarly fails to take into account the offender's juvenile status at the time of the offense, and effectively forces juvenile offenders to serve disproportionate sentences of the kind forbidden by *Miller*"). Juvenile homicide offenders, like Mr. Dillbeck, are entitled to individualized sentencing determinations where the sentencer has "'the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.'" *Horsley v. State*, 160 So. 3d 393, 399 (Fla. 2015) (quoting *Miller*, 567 U.S. at 489).

Mr. Dillbeck now files this motion under Rule 3.800(a), which allows a court "at any time [to] correct an illegal sentence imposed by it . . . when it is affirmatively alleged that the court records demonstrate on their face an entitlement to that relief."   Fla. R. Crim. P.

---

[2]     The United States Supreme Court has also held that *Miller* applies retroactively to individuals whose convictions and sentences were final at the time *Miller* was decided. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 733 (2016) (prohibiting a life sentence without parole for a juvenile absent a forward-looking determination that a particular child "exhibits such irretrievable depravity that rehabilitation is impossible").

**Exhibits Page 56**

3.800(a)(1). Rule 3.800(a) is available to correct a sentence that is patently illegal on the face of the record, because it was imposed under a sentencing statute already determined to be unconstitutional. *Id.*

Mr. Dillbeck was born on May 24, 1963, and the offense in this case occurred on April 11, 1979, when Mr. Dillbeck was fifteen years old. At the time of sentencing, the first-degree murder statute did not provide for, nor did the Mr. Dillbeck receive, the individualized sentencing determination where he was provided the opportunity to provide circumstances that would mitigate his sentence. Rather, Mr. Dillbeck pleaded guilty to the offense to avoid being sentenced to death, and thus the trial court had one sentencing option for Mr. Dillbeck: a mandatory life with the possibility of parole sentence. *See* § 782.04, Fla. Stat. (1979).

Moreover, despite Mr. Dillbeck ostensibly having an opportunity for future early release through parole, the Supreme Court of Florida has explained that "Florida's existing parole system, as set forth by statute, does not provide for individualized consideration [of the inmate's] juvenile status at the time of the murder, as required by *Miller*." *Atwell,* 197 So. 3d at 1041. The lack of an individualized consideration at the time Mr. Dillbeck was sentenced to the life with parole sentence requires this Court to find his sentence unconstitutional under *Miller* and *Atwell* without any need to consider the defendant's presumptive parole release date. *Michel v. State*, 204 So. 3d 101 (Fla. 4th DCA 2016) *rev. granted, Carter v. State*, 215 So. 3d 125 (Fla. 3d DCA 2017); *Florida v. Ratliff*, 2017 WL 5012996 (Fla. 2d DCA 2017)(Concluding that the "Third and Fourth District have adopted the better interpretation of *Atwell*" and that "*Atwell* turns on the conclusion that Florida's parole system is not sufficient to remedy the constitutional violations.").

4

**Exhibits Page 57**

Thus, there is no question that Mr. Dillbeck's juvenile life with the possibility of parole sentence violates *Miller* and a simple review of documents already in the trial record will confirm that he was a juvenile at the time of the offense and that he did in fact receive the offending sentence. Since *Atwell*, Florida courts considering claims analogous to the claim raised herein have reversed the denial of such claims, summarily vacated the unconstitutional juvenile life with parole sentence, and simply ordered a resentencing without the need for further evidentiary proceedings. *See Michel*, 204 So. 3d at 101; *Smith v. State*, 2016 WL 6353115 (Fla. Oct. 28, 2016); *Howard v. State*, 2016 WL 6716109 (Fla. Oct. 28, 2016); *Enriquez v. State*, 2016 WL 6353336 (Fla. Oct. 28, 2016); *Allen v. State*, 2016 WL 6354018 (Fla. Oct. 28, 2016); *State v. Weiand*, 2016 WL 6354186 (Fla. Oct. 28, 2016); *McPherson v. State*, 2016 WL 6357975 (Fla. Oct. 28, 2016); *Hixon v. State*, 205 So. 3d 834 (Fla. 2d DCA 2016); *Landy v. State*, 205 So. 3d 801 (Fla. 2d DCA 2016).

**NATURE OF RELIEF SOUGHT**

Mr. Dillbeck respectfully requests that this Court immediately issue an order vacating his unconstitutional juvenile life with the possibility of parole sentence and set this matter for resentencing pursuant to the sentencing provisions enacted in Sections 921.1401 and 921.1402, Florida Statutes. *Atwell*, 197 So. 3d at 1050.  He further requests sufficient time in order to prepare for the constitutionally required individual sentencing hearing.

**Exhibits Page 58**

Respectfully Submitted,

/s/ Roseanne Eckert
Roseanne Eckert
Fla. Bar 82491
FIU College of Law
11200 SW 8th St. 1010
Miami, FL 33199-2516
reckert@fiu.edu
(305) 348-7484

*Counsel for Mr. Dillbeck*

**CERTIFICATE OF SERVICE**

I, Roseanne Eckert, hereby certify that on April 27, 2018, I served this motion to correct an illegal sentence by electronic transmission via the e-portal to the Post Conviction Unit at cross@sao.cjis20.org and ServiceSAO-LEE@sao.cjis20.org.

/s/ Roseanne Eckert
Roseanne Eckert

**Exhibits Page 59**

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DONALD DAVID DILLBECK,

      *Petitioner,*

v.                                CASE NO.: 4:07-cv-00388-MW

JAMES V. CROSBY,

      *Respondent.*

_____/

<u>RESPONSE TO MOTION TO VACATE ORDER</u>

On April 27, 2018, the Capital Habeas Unit of the Office of the Federal Public Defender for the Northern District filed a "notice of mootness and motion to end capital habeas unit's authorization to appear in state court." (Doc. #56). This Court lacks jurisdiction to grant the motion. The Eleventh Circuit, not this Court, has jurisdiction. This Court only has jurisdiction to deny a 60(b)(6) motion, not grant one. The order that the CHU seeks to vacate is the exact order that the State is appealing. Furthermore, even if this Court had jurisdiction, vacatur is an equitable remedy and the equities are not in Dillbeck's favor. The equities are in favor of the State. Moreover, the issue is not moot. Two exceptions to the mootness doctrine apply: 1) the capable-of-repetition-yet-evading-review exception; and 2) the voluntary cessation of the questioned practice exception. This Court should deny the motion to vacate.

**Exhibits Page 61**

<u>Facts and relevant procedural history</u>

On April 5, 2018, the CHU filed an "emergency/expedited motion to permit the capital habeas unit to appear in state court" seeking authorization to appear in state court to raise a claim regarding a *Miller v. Alabama*, 567 U.S. 460 (2012), and *Atwell v. State*, 197 So.3d 1040 (Fla. 2016), resentencing. (Doc. #44).[1]

On the same day, April 5, 2018, this Court granted the motion. (Doc. #45). This Court's order stated: "The Capital Habeas Unit may pursue state court relief under *Miller* and *Atwell*, and may litigate any issue arising from the *Atwell* proceeding that might implicate the death penalty." (Doc. #45).

On April 9, 2018, the State filed a motion to clarify the order arguing that the authorization for the CHU-N to appear in state court should be limited to filing a motion for a *Atwell* resentencing and a motion to appoint the Office of the Public Defender to handle any *Atwell* resentencing. (Doc. #46). The State's motion for clarification pointed out that the CHU's motion

---

[1] It is not accurate to refer to the possible resentencing in state court as a *Miller/Atwell* resentencing. *Miller* does not require any resentencing. *Miller* only applies to life **without** parole sentences for juvenile offenders. It is the Florida Supreme Court's decision in *Atwell* expanding that holding to include life **with** parole sentences for juvenile offenders that requires the resentencing. Dillbeck was sentenced to life with parole for the murder of the deputy. It is *Atwell,* not *Miller,* that requires a resentencing. There is no federal constitutional basis for the resentencing. It is purely a matter of state law. So, the proceedings is accurately referred only as an *Atwell* resentencing.

-2-

**Exhibits Page 62**

for authorization misstated the State's position; that the Office of the Public Defender of the 20th Judicial Circuit would handle any resentencing as constitutionally required under *Gideon v. Wainwright*, 372 U.S. 335 (1963); that allowing federal habeas counsel to appear in state court when the state provided counsel violated both Supreme Court precedent of *Harbison v. Bell*, 556 U.S. 180, 189 (2009), as well as the Eleventh Circuit precedent of *Lugo v. Sec'y, Fla. Dept. of Corr.*, 750 F.3d 1198, 1214 (11th Cir. 2014), and *Gary v. Warden*, 686 F.3d 1261, 1277 (11th Cir. 2012); that the resentencing in the non-capital case used as an aggravator in this capital case had no real possibility of impacting the capital habeas case because only the sentence for the prior murder was at issue, not the conviction, and therefore, was not a basis for authorizing the CHU to appear in state court.  The State explained that, contrary to the CHU's claim, because it was merely a resentencing, there was no possibility of *Johnson v. Mississippi*, 486 U.S. 578 (1988), claim arising from the resentencing.  The State also pointed out that the CHU created the "emergency" by waiting nearly two years before raising the issue.

On April 10, 2018, the CHU filed a response to the motion for clarification, as ordered by this Court,  arguing the motion for clarification should be denied.  (Doc. #49).  The CHU asserted that the authorization to appear should *not* be limited to initiating the *Atwell* resentencing, and they

**Exhibits Page 63**

should *not* be "required to wash its hands of the matter entirely, regardless of whether the local public defender or other non-CHU counsel agrees to undertake the *Miller/Atwell* litigation and preserve Petitioner's rights in the capital case."   The CHU asserted that it would violate its "duty of representation under § 3599 to file a motion for *Atwell/Miller* resentencing and then simply walk away."   The CHU's response characterized limiting its appearance in any manner as being "harmful restrictions." The response stated "that there is no guarantee that the public defender's office or another state attorney will agree to the representation" without explaining how to the public defender could decline to represent Dillbeck at the resentencing in the face of its statutory and constitutional duty under *Gideon* to do so.   The CHU stated that "there are legitimate arguments that may result from Petitioner being resentenced to life on a conviction that served as an aggravating factor during the penalty phase of his capital trial" without identifying any such legitimate arguments. (Doc. #49 at 5).   In a footnote, the CHU asserted, based on an "exchange of emails", CHU counsel believed that he had "accurately represented Respondent's position and did not anticipate Respondent's current motion." (Doc. #49 at n.1).   In another footnote, the CHU again expressed its view it is not necessarily even required to seek authorization before appearing in state court.   The CHU wrote that it was "unclear whether federal court authorization is even

-4-

**Exhibits Page 64**

necessary in this matter, but CHU counsel sought authorization in an abundance of caution." (Doc. #49 at n.2). The CHU's response concluded that this Court's order authorizing without limitation was "so clear and correct that the Court may wish to deny Respondent's motion without a hearing." (Doc. #49 at 7).

On the same day, April 10, 2018, this Court cancelled the hearing on the State's motion and denied the State's motion for clarification.  (Doc. #50).

On April 18, 2018, the State filed a notice of email communications which included the complete email chain between the parties to establish that the State never agreed to the CHU appearing in state court beyond filing an initial motion for appointment for the appointment of the Public Defender for purposes of the *Atwell* resentencing. (Doc. #52).

On April 24, 2018, the State filed a notice of appeal of the order authorizing the CHU to appear in state court.  (Doc. #53).  This case is currently pending on appeal in the Eleventh Circuit. *Dillbeck v. Attorney General*, Fla., No. 18-11748.  The State's initial brief is currently due on Tuesday, June 5, 2018.

On April 27, 2018, three days after the State filed its notice of appeal, the CHU filed a motion to vacate the order being appealed. (Doc. #56).  On April 27, 2018, the CHU filed also a notice of state court filing with the state

**Exhibits Page 65**

court motion for the *Atwell* resentencing signed by Roseanna Eckert on April 27, 2018, to establish that she was handling the *Atwell* resentencing in state court, not the CHU. (Doc. #58).

On the same day as the CHU's motion to vacate was filed, April 27, 2018, this Court scheduled a telephonic hearing on the motion to vacate for Monday, April 30, 2018 at 10:00 a.m. ETS. (Doc. #57).

This is the State's written response to the motion to vacate.

### Lack of jurisdiction

This Court lacks jurisdiction.   Jurisdiction over this case is in the Eleventh Circuit.  Upon a filing of a notice of appeal, the district court loses jurisdiction over the matters being appealed and jurisdiction of those matters is transferred to the appellate court and remains with the appellate court until its mandate issues. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58-61 (1982) (stating that the "filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). The purpose of this standard rule of appellate procedure is to avoid confusion that would ensue from having the same issues before two different courts simultaneously.  *In re Hughes*, 356 Fed. Appx. 300 (11th Cir. 2009) (stating that this "prohibition is meant to

-6-

**Exhibits Page 66**

promote judicial economy and avoid the confusion and inefficiency that might flow from putting the same issue before two courts at the same time" citing 20-303 Moore's Federal Practice: Civil § 303.32[1] (3d ed. 2009); *Shewchun v. United States*, 797 F.2d 941, 943 (11th Cir.1986) (noting that the prohibition against a district court exercising jurisdiction over a case properly before the court of appeals prevents parties from fighting a "two front war for no good reason"). But that is exactly what the CHU's motion to vacate entails. The order authorizing the CHU to appear in state court is now improperly being litigated in two courts.

Opposing counsel argues that the exact order being appealed is some how "collateral" to the appeal. (Doc. #56 at 4). An example of a collateral motion that a district court retains jurisdiction to consider, despite a pending appeal, is a Rule 11 motion for sanctions. *Mahone v. Ray*, 326 F.3d 1176, 1180 (11th Cir. 2003) (citing cases). But the order opposing counsel seeks to vacate is the exact order that is being appealed by the State. The order being appealed is never collateral to the appeal.

Nor is the State's appeal "frivolous" or "jurisdictionally defective." (Doc. # 56 at 4). An appeal involving controlling Supreme Court precedent as of well as controlling Eleventh Circuit precedent on the side of the party appealing can hardly be characterized to as "frivolous." And opposing counsel's quick actions to recruit another attorney to represent to Dillbeck

**Exhibits Page 67**

in state court in an attempt to unilaterally moot the order being appealed belie his assertion of frivolity.[2]

As to the appeal being jurisdictionally defective, while there may well be some dispute on appeal over the contours of the collateral order doctrine applied to an order entered in a closed federal habeas case, it is for the Eleventh Circuit to determine whether the collateral order doctrine applies to this case, not this Court.  Normally, the doctrine is invoked as a basis for an interlocutory appeal, rather than an appeal after the final order is entered, as in this closed federal habeas case.  But, in many ways that procedural posture makes an appeal under doctrine more sound because it establishes the effectively unreviewable on appeal from a final judgment prong of the test of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541(1949). The State certainly has a viable argument that the collateral order doctrine applies under Eleventh Circuit precedent.  *Plaintiff A v. Schair*, 744 F.3d 1247, 1252 (11th Cir. 2014); *Miccosukee Tribe of Indians of Florida v. S.*

---

[2] Opposing counsel complains that he was not consulted before the notice of appeal was filed. (Doc. #56 at 3).  The CHU does not cite any authority to support its complaint.  There is no rule requiring counsel to consult with opposing counsel before filing a notice of appeal.  Consultation is required for motions, not notices of appeal.  N.D. Fla. local rule 7.1(B) (requiring an attorney conference before any motion is filed).

Nor does such a consultation regarding taking an appeal make much sense. Why I would consult with Mr. Nolas about whether he was actually going to appear in state court when he filed an "emergency" motion seeking to do just that and when the CHU is appearing in state court in dozens of other capital cases?

**Exhibits Page 68**

*Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1199 (11th Cir. 2009).  But again the issue of the applicability of the collateral order doctrine is for the Eleventh Circuit to determine.

The CHU urges this Court to vacate its order to promote judicial efficiency. (Doc. #56).  But there is no efficiency exception to the rule this Court lacks jurisdiction to vacate the order under review once the notice of appeal was filed.  And, contrary to opposing counsel assertions of being compelled to expend limited resources on the appeal, his caseload will be much lighter after the appeal because the Eleventh Circuit will follow United States Supreme Court and its own precedent and forbid him from appearing in state court.  The Eleventh Circuit will follow *Harbison*, *Lugo*, and *Gary*.  The CHU will no longer be spending its limited time and resources appearing in state court in dozens of capital cases duplicating state counsel's role and in some cases, interfering with state counsel and can properly spend his time and resources in federal court where his time and resources should be spent.  The long way will be the short way in the end.  So, even if there was an efficiency exception to jurisdiction, it would not apply to this appeal.

Opposing counsel points to two means for this Court to vacate its order: 1) issue a order withdrawing the prior order; or 2) treat the motion to vacate as a 60(b)(6) motion. (Doc. #56 at 3).  But both routes requires

**Exhibits Page 69**

that this Court have jurisdiction and it does not, as explained above.

The second route of granting a 60(b)(6) motion is not permitted. *Mahone v. Ray*, 326 F.3d 1176, 1180 (11th Cir. 2003) (explaining that while district courts retain jurisdiction to deny 60(b) motions, district courts lack jurisdiction to grant them, stating: "following the filing of a notice of appeal district courts do not possess jurisdiction to grant a Rule 60(b) motion."); *Munoz v. United States*, 451 Fed. Appx. 818, 820 (11th Cir. 2011)(explaining in a habeas case that the district court retains jurisdiction to deny a 60(b) motion but if the district court believes there is merit to the 60(b) motion, it must inform the Eleventh Circuit and petition the Eleventh Circuit to relinquish jurisdiction back to the district court). This Court only has jurisdiction to deny the 60(b)(6) motion, not jurisdiction to grant it.

This Court simply cannot vacate the order because this Court has no jurisdiction over the exact order that is being appealed. This Court lacks jurisdiction to take any action other than deny the 60(b)(6) motion to vacate.

### The equitable remedy of vacating an order

Furthermore, in addition to the lack of jurisdiction, there is another problem with invoking the equitable remedy of vacating the order. Dillbeck does not meet the legal standard for vacating the order.

*U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S.

**Exhibits Page 70**

18 (1994), concerned 60(b) motions to vacate after the parties had settled.

The joint settlement had mooted the issue that the Supreme Court granted

certiorari to hear.  The Supreme Court adopted a balancing approach to the

"equitable tradition of vacatur" explaining that the principal determination

was whether the "party seeking relief from the judgment below caused the

mootness by voluntary action" such that it can be said that "the losing party

has voluntarily forfeited his legal remedy."  A court must also account for

the public interest before vacating an order.   The *Bancorp* Court also

discussed the situation when mootness "results from unilateral action of the

party who prevailed below" rather than from settlement.  *Id.* at 25 (citing

*Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 675 (1944),  and *Heitmuller*

*v. Stokes*, 256 U.S. 359, 362–63 (1921)).  The United States Supreme Court

in *Bancorp* explained that because vacating an order is an equitable

remedy, the equities and party's actions are considered.

　　None of the *Bancorp* factors are present here.  The State has not

settled; the State has taken no action to cause mootness; the State has

done nothing to forfeit its appeal.  Moreover, the public interest is for the

State's appeal to proceed.  As the Eleventh Circuit as already observed in

*Gary*, when federal habeas counsel mettles in state court, comity problems

and "troubling federalism concerns" arise. *Gary*, 686 F.3d at 1278. The

**Exhibits Page 71**

*Gary* Court noted that authorizing federal habeas counsel to litigate in state court would mean that federal interference with state courts would be "inevitable." *Id.*   The public interest weighs strongly against this Court vacating its order.

Furthermore, and most critically, the mootness resulted from the unilateral actions of the CHU recruiting *pro bono* counsel.  A party may not unilaterally moot an appeal.  The motion for *Atwell* resentencing filed in state court entitled "Motion to correct illegal sentence" was filed by Roseanna Eckert on April 27, 2018.  The motion was filed three days **after** the State filed its notice of appeal in this case.  The CHU recruiting *pro bono* counsel to appear in state court after the State's notice of appeal to the Eleventh Circuit was filed was an attempt to intentionally moot the issue. The CHU is not entitled to have the order vacated as moot by playing such games.

The CHU does not discuss any of these factors or *Bancorp* in its motion.  Indeed, the CHU cites no relevant legal authority in its motion.

The equities call for the denial of the motion to vacate.

### Mootness

Opposing counsel argues that the CHU recruiting *pro bono* counsel to appear in state court moots the issue of the CHU appearing in state court.

**Exhibits Page 72**

Roseanna Eckert filed a motion for *Atwell* resentencing in state court on April 27, 2018.  The motion was filed in state court three days after the State filed its notice of appeal.  But the issue of mootness is for the Eleventh Circuit to decide, not this Court.

But the State will address the mootness issue in an abundance of caution.  First, to clarify, Respondent is not seeking to appeal the order "based on the unavailability of other state counsel" has opposing counsel would have it. (Doc. #56 at 4).   To the contrary, the State repeatedly pointed out in its motion to clarify that Dillbeck had state counsel available to him.  The State explained that because a resentencing was at issue, the Office of the Public Defender would be appointed to handle any *Atwell* resentencing, as required by Florida statutes and *Gideon*.  The State's entire argument in its motion to clarify was that the CHU could not appear in state court, under *Harbison*, *Lugo,* and *Gary,* because state counsel was available.

Turning to the mootness claim, this issue is not moot despite CHU recruiting *pro bono* counsel to appear in state court because two exceptions to the mootness doctrine apply.

**Capable of repetition yet evading review exception**

When an issue is capable of repetition yet evades review, the courts

-13-

**Exhibits Page 73**

review the issue regardless of its mootness. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (explaining that the "capable of repetition, yet evading review" exception to the mootness doctrine was limited to the situation where: 1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and 2) there was a reasonable expectation that the same complaining party would be subjected to the same action again" quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)); *Strickland v. Alexander*, 772 F.3d 876, 887 (11th Cir. 2014) (concluding the "capable of repetition, yet evading review" exception applied).

Here, unlike the normal situation, it is not that the challenged action is too short in duration to be litigated before it becomes moot, it is that the main litigation is already over. Many of the orders allowing the CHU to appear in state court are being entered in closed cases. In such cases, including this one, the main appeal was over years ago, so the state cannot merely cross appeal the issue of the CHU improperly appearing in state court when the final order is appealed to the Eleventh Circuit. The final order in this case denying the habeas petition was entered and affirmed by the Eleventh Circuit years ago. *Dillbeck v. McNeil*, 2010 WL 419401 (N.D. Fla. Jan. 29, 2010); *Dillbeck v. McNeil*, 10-11042-P (11th Cir.)(denying COA).

Moreover, the State has every reasonable expectation that the CHU will appear in state court again. Courts often look at the history between

**Exhibits Page 74**

the parties to determine if it is likely that the same dispute will arise again. *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 597 (6th Cir. 2014)(holding that the appeal fits within "the capable of repetition, yet evading review" exception based on the history of the parties interactions). But, here, it is not that the dispute is "likely" to reoccur in the future.   Instead, it is occurring in dozens of other capital cases currently. Right now, the CHU-N is appearing in state court to litigate claims based on *Hurst v. Florida*, 136 S.Ct. 616 (2016),  and *Hurst v. State*, 202 So.3d 40 (Fla. Oct. 14, 2016).[3] Indeed, this Court has relied on the fact that "the CHU has been permitted to exhaust *Hurst* relief in other cases in this Court" as reason for permitting the CHU to appear in other capital cases. *Hutchinson v. Jones*, 3:13cv128/MW(N.D. Fla March 2, 2017)(Doc. #69 at 2) (citing *Archer v. Jones*, Case No. 3:06cv312/MCR, ECF No. 78; *Guardado v. Jones*, Case No.

---

[3] These cases include: *Alston v. Sec'y*, *Fla. Dept. of Corr.*, No. 3:04-cv-257 (M.D. Fla. Doc. #118); *Archer v. Jones*, No. 3:06-cv-312 (N.D. Fla. Doc. # 64); *Bailey v. Jones*, No. 5:14-cv-333 (N.D. Fla. Doc. # 51); *Bates v. Jones*, No. 5:09-cv-081 (N.D. Fla. Doc. #53); *Booker v. Jones*, No. 1:08-cv-143 (N.D. Fla. Doc. #55); *Brooks v. Jones*, No. 3:15-cv-264 (N.D. Fla. Doc. #27); *Carter v. Sec'y*, *Fla. Dept. of Corr.*, No. 3:15-cv-1198 (M.D. Fla. #22); *Foster v. Jones*, No. 5:03-cv-108 (N.D. Fla. Doc. # 63); *Grim v. Jones*, No. 3:08-cv-002 (N.D. Fla. Doc # 53); *Guardado v. Jones*, No. 4:15-cv-256 (N.D. Fla. Doc. #13); *Heath v. Jones*, No. 1:09-cv-148 (N.D. Fla. Doc. #115); *Hertz v. Jones*, No. 4:06-cv-507 (N.D. Fla Doc. # 39); *Hutchinson v. Jones*, No. 3:13-cv-128 (N.D. Fla Doc. #69); *Lawrence v. Jones*, No. 3:03-cv-97 (N.D. Fla. Doc. #87); *McMillian v. Sec'y*, *Fla. Dept. of Corr.*, No. 3:16-cv-923 (M.D. Fla. Doc. #10); Rodgers v. Jones, No. 3:15-cv-507 (N.D. Fla. Doc. #15); *Rigterink* v. *Sec'y*, *Fla. Dept. of Corr.*, No. 8:16-cv-1680 (M.D. Fla. Doc. #9); *Stephens v. Sec'y*, *Fla. Dept. of Corr.*, No. 3:08-cv-260 (M.D. Fla. Doc. #28); *Wade v. Sec'y*, *Fla. Dept. of Corr.*, No. 3:15-cv-200 (M.D. Fla. Doc. #26).

**Exhibits Page 75**

4:15cv256/RH, ECF No. 20; and *Bailey v. Jones*, 5:14cv333/MCR, ECF No. 51, as support).  Right now, the CHU is also appearing in state court to litigate intellectual disability claims based on *Hall v. Florida*, 134 S.Ct. 1986 (2014), in at least two cases. *Walls v. State*, 213 So.3d 340, 340 (Fla. 2016) (listing Billy H. Nolas, Chief, Capital Habeas Unit, Office of the Federal Public Defender, Northern District of Florida as counsel of record along with Baya Harrison, III, Special Assistant, Capital Collateral Regional Counsel—Middle Region); *Freeman v. Atty. Gen.*, 03-00668-CV-J-32 (M.D. Fla.).  The CHU is appearing in state court without authorization from the district courts in both *Walls* and *Freeman*.  CHU additionally is appearing in state court to litigate death warrant cases as it did in the recent warrant litigation in Branch. *Branch v. State*, 236 So.3d 981, 982 (Fla. 2018) (listing Capital Collateral Regional Counsel, Northern Region, as state postconviction counsel but also listing Billy H. Nolas, Chief, and Kimberly Sharkey, Attorney of the Capital Habeas Unit of the Office of the Federal Public Defender as counsel of record in the Florida Supreme Court). The CHU did not seek authorization to appear in state court before appearing as lead counsel in the state court warrant litigation in *Branch*.  There is no doubt that the CHU appearing is capable of repetition because it is occurring presently in dozens of capital cases.

Furthermore, the Middle District has created its own capital habeas

-16-

**Exhibits Page 76**

unit (CHU-M), so the issue of whether that new CHU can appear in state court is likely to arise in the Middle District in the future as well.  The issue of the CHU improperly appearing in state court is currently occurring throughout the state courts located in both the Northern and Middle Districts.

Additionally, this issue is evading review.  The State attempted to take interlocutory appeal, under 28 U.S.C. § 1292(b), of an order permitting the CHU to appear in state court to litigate a *Hurst* claim but the district court denied the State permission to appeal in *Archer v. Jones*, Case No. 3:06-cv-312 (N. D.)  (Doc. #90 - order dated August 5, 2016).  The CHU filed a 20-page response in opposition to that appeal. (Doc. #89).[4]  The State also filed a motion for permission to appeal under § 1292(b) in another case months ago but the district court has not granted the State permission as of April 28, 2018. *Lott v. Att. Gen of Fla.*, 6:06-cv-778-ACC-GJK (M.D. Fla.)(Doc. #45

_____

[4] *Archer* was a particularly good vehicle because it highlighted the concerns of federal habeas counsel interfering with state counsel's litigation strategy.  In *Archer*, state postconviction counsel of record, registry counsel Martin J. McClain, asserted in the rehearing filed in the Florida Supreme Court that Billy H. Nolas of the CHU assumed representation without any prior consultation with him. *Archer v. Jones*, SC16-2111 (rehearing filed April 19, 2017).  Mr. McClain stated: "undersigned counsel was surprised when he learned a habeas petition had been filed along with a motion to remand" and that "undersigned counsel first learned of the habeas petition when Respondent served him with the opposition to the motion to remand and with the motion to strike." Rehearing at 3 & n.2.

**Exhibits Page 77**

filed Jan. 16, 2018).  The CHU promptly opposed that motion as well.  *Lott*, 6:06-cv-778-ACC-GJK (Doc. #46).  Additionally, the State filed a motion to clarify the scope of the CHU ability to appear in state court in the Eleventh Circuit but it was denied for lack of jurisdiction. *Reese v. Sec'y, Fla. Dept. of Corr*. 11-12178-P (11th Cir. May 23, 2017).  The CHU also objected to the State's motion in *Reese*.  The State has been attempting to appeal the issue of the CHU appearing in state court for over a year.  And the CHU has opposed any appeal to the Eleventh Circuit every time including attempting to moot the State's appeal in this case.  The issue is evading review.

Because the issue is arising in numerous capital cases yet evading review, the issue is not moot.

### Voluntary cessation of the questioned practice exception

There is another exception to the mootness doctrine that applies as well.  Voluntary cessation of a challenged practice rarely moots a federal case. *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).  That rule "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).  As the Eleventh Circuit has explained, when a party abandons a challenged practice freely, "the case

**Exhibits Page 78**

will be moot only if it is ***absolutely clear*** that the questionable allegedly wrongful behavior could not reasonably be expected to recur." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (emphasis added). But "where the circumstances surrounding the cessation suggest that the defendant is attempting to manipulate the court's jurisdiction to insulate a favorable decision from review, courts will not deem a controversy moot" *Harrell*, 608 F.3d at 1266 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000), and *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005)). A court considers the timing of the defendant's cessation as being "critical" in determining mootness. *Harrell*, 608 F.3d at 1266. If the cessation occurs before the litigation, that weighs in favor of a finding of mootness, but if the cessation occurs after the litigation, that weighs against a finding of mootness. *Id.* A defendant must provide a well-reasoned justification for the cessation, such as the repeal of the applicable statute or an intervening Supreme Court case, that demonstrates the party's intent "to hold steady" in its revised course. The cessation must "unambiguously" terminate the challenged conduct. *Id.* at 1267.[5]

---

[5] The State is not conceding that the CHU is a governmental actor to which *Troiano v. Supervisor of Elections in Palm Beach County, Fla.*, 382 F.3d 1276 (11th Cir. 2004), presumption would apply but because the CHU cannot begin to meet any standard for mootness due to its partial voluntary cessation in this case, the State will use that standard.

**Exhibits Page 79**

Here, the voluntary cessation is only a partial cessation. The CHU has not ceased appearing in state court.  The CHU is still appearing in state court in numerous other cases.  The CHU has only ceased appearing in state court in this one case for the purpose of attempting to prevent appellate review of its questionable practice.  If a temporary but complete cessation of the questioned practice is not enough to moot the issue, then a partial cessation certainly is not enough to moot the issue.

It is **_absolutely clear_** that the CHU's wrongful behavior of appearing in state court can not only be expected to recur in the future in other cases but is presently occurring in dozens of other cases.  On this basis alone, the issue is not moot.

Furthermore, the circumstances surrounding the cessation suggest that the defendant is attempting to manipulate the court's jurisdiction.  The fact that the CHU recruited _pro bono_ counsel to appear in state court after the State filed its notice of appeal and after the CHU vigorously sought authorization to appear in state court, as it has done in numerous other cases, more than suggests that the CHU is attempting to manipulate the court's jurisdiction.  That suggestion is reenforced by CHU's history of opposing the State's various attempts to appeal this issue to the Eleventh Circuit.  The only case where the CHU retreated from actually appearing in state court by recruiting _pro bono_ counsel is the one case in which the State

**Exhibits Page 80**

filed a notice of appeal under 28 U.S.C. § 1291 explicitly invoking the collateral order doctrine. The CHU is attempting to moot the State's appeal and to manipulate the courts' jurisdiction by creating a mootness issue. Under such circumstances, the issue is not moot.

The State's position, which it has uniformly asserted before the federal district courts when the CHU has filed its numerous motions for authorization to appear in state court, is that *Harbison, Lugo,* and *Gary* preclude the CHU from appearing in state court because Florida provides state postconviction counsel; provides state clemency counsel; and provides state resentencing counsel. This Court has repeatedly insisted that the State's position that Supreme Court and Eleventh Circuit precedent precludes the CHU from appearing in state court is an overreading of that precedent. This Court has referred to that view as "unduly restrictive." *Hutchinson v. Jones*, 3:13cv128/MW(N.D. Fla March 2, 2017)(Doc. #69 at 2). It is time for the Eleventh Circuit to speak their piece on the subject of whether the State is overreading their precedent.

Accordingly, this Court should deny the motion to vacate.

**Exhibits Page 81**

Respectfully submitted,

PAMELA JO BONDI.
ATTORNEY GENERAL

/s/ *Charmaine M. Millsaps*
CHARMAINE M. MILLSAPS
SENIOR ASSISTANT ATTORNEY GENERAL
FLORIDA BAR NO. 0989134
OFFICE OF THE ATTORNEY GENERAL
THE CAPITOL,PL-01
TALLAHASSEE, FL 32399-1050
(850) 414-3300
primary email:
capapp@myfloridalegal.com
secondary email:
charmaine.millsaps@myfloridalegal.com

COUNSEL FOR RESPONDENT

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing
RESPONSE TO MOTION TO VACATE ORDER has been furnished by
electronic mail via CM/ECF to Billy H. Nolas, Chief of the Capital Habeas
Unit of the Federal Public Defender's Office, Northern District of Florida,
227 N. Bronough Street, Suite 4200, Tallahassee, FL 32301-1300; phone:
(850) 942-8818; email: billy_nolas@fd.org this   29th   day of April, 2018.

/s/ *Charmaine M. Millsaps*
CHARMAINE M. MILLSAPS
ATTORNEY FOR RESPONDENT

-22-

**Exhibits Page 82**

CERTIFICATE OF WORD COURT

I HEREBY CERTIFY that this pleading contains 5,263 words, excluding the case style, signature blocks, and certificates, according to Wordperfect's word count function, which is under the 8,000 word limit for memorandum under Northern District local rule 7.1(F).

/s/ *Charmaine M. Millsaps*
Charmaine M. Millsaps
Senior Assistant Attorney General
COUNSEL FOR RESPONDENT

**Exhibits Page 83**

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DONALD DAVID DILLBECK,**

          **Petitioner,**

                                     **CAPITAL CASE**

**v.**                            **Case No.  4:07cv388-MW**

**JULIE L. JONES, SECRETARY,
FLORIDA DEPARTMENT
OF CORRECTIONS,**

          **Respondent.**

_____/

**ORDER DISMISSING MOTION TO VACATE AND ENTERING
INDICATIVE RULING ON PETITIONER'S MOTION BARRED BY
PENDING APPEAL**

Petitioner has filed a motion to end the Capital Habeas Unit's authorization

to appear in Petitioner's state court proceeding. ECF No. 56. This Court addressed

Petitioner's motion at a telephonic hearing on April 30, 2018. For the reasons

stated on the record and summarized below, this Court **DISMISSES** Petitioner's

motion, ECF No. 56, and enters an indicative ruling pursuant to Federal Rule of

Civil Procedure 62.1(a).

On April 5, 2018, Petitioner filed an emergency motion to permit the Capital

Habeas Unit to appear in state court on his behalf to pursue relief under *Miller* and

*Atwell*. ECF No. 44. Petitioner represented that he faced a May 26, 2018 deadline

**Exhibits Page 85**

to initiate the state proceeding that may implicate federal constitutional arguments regarding his death sentence and no other counsel was reasonably available to assist him. The clock was ticking. Accordingly, this Court granted Petitioner's emergency motion that same day. ECF No. 45.

Respondent promptly moved to clarify this Court's order permitting the Capital Habeas Unit to appear in state court for the limited purpose of filing a motion for a *Miller* resentencing and a motion to appoint the Office of the Public Defender of the 20th Judicial Circuit to handle any resentencing. ECF No. 46. This Court found no limitation of its prior order was necessary and denied Respondent's motion. ECF No. 50. Respondent then filed a notice of appeal of this Court's order granting Petitioner's emergency motion to permit the Capital Habeas Unit to appear in state court. ECF No. 53.

Within days of Respondent filing the notice of appeal, Petitioner secured legal representation by Ms. Roseanne Eckert. *See* ECF No. 58 ("Notice of State-Court Filing"). At the hearing on Petitioner's pending motion, Respondent stipulated to the fact that Ms. Eckert has since filed a resentencing motion under *Miller* and *Atwell*. Now Petitioner moves to vacate this Court's prior order authorizing the Capital Habeas Unit to appear in state court as Ms. Eckert's representation has eliminated the need for the Capital Habeas Unit's appearance.

**Exhibits Page 86**

This Court's prior order is likely properly reviewable under the collateral order doctrine. *See Hofmann v. De Marchena Kaluche & Asociados*, 642 F. 3d 995, 997-98 (11th Cir. 2011). And, as this Court noted on the record, Respondent's appeal strips this Court of jurisdiction to grant Petitioner's motion. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Thus, this Court may only either defer ruling on Petitioner's motion, deny Petitioner's motion, or state that it would grant the motion in the event the Eleventh Circuit remands for that purpose. *See* Fed. R. Civ. P. 62.1(a). Accordingly, Petitioner's motion, ECF No. 56, is **DISMISSED**.

Nonetheless, this Court would grant Petitioner's pending motion in the event the Eleventh Circuit remands for that purpose. This Court initially granted Petitioner's time-sensitive motion seeking authorization for the Capital Habeas Unit to appear on his behalf to initiate the state court proceeding before Petitioner's time ran out. Petitioner has now secured other counsel who has initiated the state court proceeding. Moreover, Petitioner's motion indicates that the Capital Habeas Unit never filed anything in state court nor took other action consistent with this Court's grant of authority. Petitioner no longer needs the Capital Habeas Unit to represent him in state court on an emergency basis. Accordingly, this Court

**Exhibits Page 87**

indicates that had Respondent not appealed and Petitioner's motion to vacate were

properly before this Court, this Court would grant Petitioner's motion.

**SO ORDERED on April 30, 2018.**

**s/Mark E. Walker**
**United States District Judge**

**Exhibits Page 88**